IN RE PETITIONS TO TRANSFER APPEALS FROM APPELLATE COURT TO SUPREME COURT.

| | | |
|---|---|---|
| 25486 | 13659 | Arnold, Paul, v. State |
| | | 89 Ind. App. 588, 166 N. E. 446 |
| 25365 | 13630 | Boston, George, v. State |
| | | 89 Ind. App. 583, 166 N. E. 448 |
| 25352 | 13633 | Brown, Omar, v. State |
| | | 92 Ind. App. 131, 167 N. E. 550 |
| 25261 | 13621 | Busch, Bernard, v. State |
| | | 92 Ind. App. 122, 165 N. E. 560, 167 N. E. 144 |
| 25518 | 13900 | Davis, Charles, v. State |
| | | 90 Ind. App. 714, 168 N. E. 925 |
| 25678 | 13755 | Doench, Arthur, v. State |
| | | 90 Ind. App. 609, 168 N. E. 494 |
| 25521 | 13677 | Duvall, John, v. State |
| | | 92 Ind. App. 133, 166 N. E. 603 |
| 25468 | 13706 | Eichoff, Peter, v. State |
| | | 89 Ind. App. 606, 166 N. E. 445 |
| 25408 | 13650 | Foster, John, v. State |
| | | 89 Ind. App. 586, 166 N. E. 447 |
| 25729 | 13783 | Hall, Helen, v. State |
| | | 90 Ind. App. 718, 168 N. E. 925 |
| 25730 | 13784 | Hall, Helen, v. State |
| | | 90 Ind. App. 548, 168 N. E. 127 |
| 25173 | 13609 | Hantz, Steve & Thresa v. State |
| | | 92 Ind. App. 107, 166 N. E. 439 |
| 25005 | 13591 | Holton, Lee, v. State |
| | | 89 Ind. App. 494, 165 N. E. 921 |
| 25373 | 13637 | Isabel, Thomas, v. State |
| | | 90 Ind. App. 131, 166 N. E. 304 |
| 25243 | 13626 | Jones, William, v. State |
| | | 89 Ind. App. 564, 166 N. E. 158 |
| 25324 | 13632 | Kappes, George, v. State |
| | | 89 Ind. App. 344, 166 N. E. 298 |
| 25436 | 13644 | Krivokucha, Sam, v. State |
| | | 89 Ind. App. 468, 165 N. E. 783, 166 N. E. 773 |

25631  13676  Linzie, Paul, v. State
          89 Ind. App. 569, 166 N. E. 294
25471  13663  McSwain, Commodore, v. State
          89 Ind. App. 592, 166 N. E. 444, 167 N. E. 568
       13741  Michaelree, David, v. State
          92 Ind. App. 147, 168 N. E. 27
       13743  Moore, C. Eugene, v. State
          92 Ind. App. 150, 168 N. E. 202
25275  13627  Renz, Arthur, and Kazel, Albert, v. State
          92 Ind. App. 128, 166 N. E. 775
       14065  Robbins, Thomas, v. State
          92 Ind. App. 155, 172 N. E. 504
25582  13667  Seibert, Edwin, v. State
          89 Ind. App. 604, 166 N. E. 256, 167 N. E. 542
25158  13598  Sovich, Michael, v. State
          92 Ind. App. 103, 167 N. E. 145
25682  13729  Stengnach, Ralph, v. State
          89 Ind. App. 486, 165 N. E. 919
24951  13582  Stevens, James, and Allen, Samuel, v. State
          92 Ind. App. 101, 165 N. E. 781
25379  13639  Thompson, Guy, v. State
          89 Ind. App. 547, 166 N. E. 23
25590  13681  Thompson, Guy, v. State
          89 Ind. App. 555, 167 N. E. 345
25273  13624  Thompson, Guy, v. State
          89 Ind. App. 541, 167 N. E. 347
25787  13932  Worsdorfer, Matthew, v. State
          90 Ind. App. 441, 169 N. E. 63

[Filed January 29, 1931. Concurring opinion filed February 12, 1931.]

*J. Frank Adams* and *Bernard C. Craig,* for petitioner Michaelree.

*Anderson & Mayfield,* for petitioner Linzie.

*Walter R. Arnold,* for petitioner Hantz.

*Herbert S. Barr* and *Arthur E. Letsinger,* for petitioners Krivokucha, Stegnach and Sovich.

*James L. Bottorff,* for petitioner Holton.

*Hawley O. Burke* and *Owen S. Boling,* for petitioners Stevens and Allen.

*Christian & Waltz* and *Worth H. Castor,* for petitioner Moore.

*Clarence R. Cowger* and *Glenn R. Slenker,* for petitioner Davis.

*Q. Austin East, Register & Register, John P. O'Donnell* and *Edwin Corr,* for petitioners Hall and Isabel.

*Richard L. Eubank,* for petitioner Kappes.

*William D. Hardy,* for petitioners Arnold, Boston, Doench, Eichoff, Foster, Jones, McSwain, Seibert, Thompson and Worsdorfer.

*Olin R. Holt,* for petitioner Brown.

*William V. Rooker,* for petitioner Duvall.

*George Sands,* for petitioners Renz and Kazel.

*Walterhouse & Miller,* for petitioner Busch.

*Hugh D. Wickens,* for petitioner Robbins.

*James M. Ogden,* Attorney-General, *Samuel R. Artman,* Assistant Attorney-General, *George W. Huffsmith, Merl M. Wall* and *V. Ed Funk,* Deputy Attorney-Generals, and *Harry L. Gause,* of Counsel, for the appellee, State of Indiana.

*William H. Thompson, Thomas D. Stevenson, Albert L. Rabb* and *Arthur L. Gilliom* as *Amici Curiae, pro se.*

MARTIN, J.—Section 1, ch. 123, Acts 1929, §2377.1 Burns Supp. 1929, provides:

> "That the jurisdiction of all appeals now pending, or hereafter taken in criminal cases, where the penalty or punishment is not death, or imprisonment in the Indiana State Prison or the Indiana Reformatory is hereby vested in the Appellate Court until January 1, 1931, after which time the jurisdiction of all such appeals shall be in the Supreme Court. All such appeals pending in the Appellate Court on January 1, 1931 shall be transferred to the Supreme Court. The decisions of the Appellate Court in such cases shall be final and conclusive and not subject to an appeal or petition to transfer to the Supreme Court."

The appeals of all the petitioners are from judgments for misdemeanors imposing fines and/or imprisonment for short terms. All (except four)[1] of these appeals were pending in the Supreme Court on March 12, 1929, the date on which the law quoted above became effective. The appeals, being within the class of cases covered by that law, were thereafter transferred to the Appellate Court, where they have been decided.

PETITIONERS FAILING TO TAKE ACTION IN THE SUPREME COURT WITHIN SIXTY DAYS AFTER IT TRANSFERRED CASES TO APPELLATE COURT CANNOT THEREAFTER FILE MOTION TO SET ASIDE ORDER OF TRANSFER.

Upon the transfer of the appeals to the Appellate Court, none of the appellants (except Robbins), filed

---

[1]The appeals of Michaelree, Moore, Robbins and Worsdorfer were perfected subsequent to March 12, 1929. The first two of these appeals were filed directly in the Appellate Court, while the last two were docketed in the Supreme Court and thereafter transferred to the docket of the Appellate Court.

any motion to set aside such order. Five of the appellants (Boston, Isabel, Kappes, Stevens and Allen) argued their cases orally in the Appellate Court and, after the several judgments were affirmed by that court, 18 appellants (Arnold, Boston, Brown, Busch, Eichoff, Foster, Hall, Holton, Isabel, Jones, Krivokucha, Linzie, McSwain, Seibert, Stegnach, Stevens and Allen and Thompson [in No. 25,379]) filed petitions for rehearing therein. The remaining appellants whose cases had been transferred to the Appellate Court (Davis, Doench, Hantz, Kappes, Sovich, Thompson [in No's. 25,273 and 25,590] and Worsdorfer), as well as those last above enumerated, then filed petitions in the Supreme Court asking this court to set aside its order transferring their cases to the Appellate Court and to re-transfer and redocket their cases. None of these appellants (except Robbins, as hereinbefore noted) filed such petitions within 60 days after the action of the Supreme Court in transferring their cases to the Appellate Court, but waited until after action was taken by that court which was unfavorable to them—in some instances as long as nine or 10 months.

A motion to set aside an order transferring an appeal from the Supreme Court to the Appellate Court, is, in effect, a petition for a rehearing, and must, under the rules of the Supreme Court, be filed within 60 days from the time the Supreme Court made the order. *McCutcheon* v. *State* (1924), 194 Ind. 560, 143 N. E. 625. The acts of 18 or more of the appellants taken in the Appellate Court were sufficient to estop them from challenging the jurisdiction of that court over their persons, *Ledgerwood* v. *State* (1893), 134 Ind. 81, 33 N. E. 631, but such acts would not prevent them from challenging the jurisdiction of that court over the offense or subject-matter, which may be done at any time. *Pease* v. *State* (1921), 74 Ind. App. 572, 129 N. E. 337. How-

ever, since the transfer of a case by the Supreme Court to the Appellate Court is a determination that the jurisdiction of the subject-matter thereof is in the Appellate Court, the question of the jurisdiction of the Appellate Court over the subject-matter had already been decided by the Supreme Court, and no action had been taken by appellants within the proper time to have that decision set aside.

QUESTION PROPERLY PRESENTED IN THREE APPEALS.

In the appeal of Robbins, the appellant, within the proper time, filed a petition asking this court to vacate its order transferring that appeal to the Appellate Court and to order the cause retransferred to this court. The appeals of Michaelree and Moore were never in the Supreme Court, and the petitions of those appellants ask that their cases be transferred to this court. In these three appeals, the questions sought to be presented are properly before the court.

§4, ART. 7, CONSTITUTION DOES NOT PROHIBIT THE LEGISLATURE FROM CONFERRING UPON THE APPELLATE COURT BY CH. 123, ACTS 1929 FINAL JURISDICTION IN A LIMITED CLASS OF CASES (MISDEMEANORS). EX PARTE FRANCE, 176 IND. 72 AND CURLESS v. WATSON, 180 IND. 86 DISTINGUISHED.

The basis of the prayers of all the several petitioners (and the points raised by all of them will be considered), is their contention that ch. 123, Acts 1929 is invalid because, in the cases regulated thereby (appeals in minor criminal prosecutions), it is provided that the decision of the Appellate Court shall be final and not subject to an appeal or petition to transfer to the Supreme Court. Petitioners say that if a right of appeal is given by statute in this state, such right cannot be limited to an appeal to the Appellate Court, but that every appellant is en-

titled to a final review of his case in the Supreme Court (or at least to a review of the statements of law made by the Appellate Court in its decision, if not of the case as a whole). To support their contentions, petitioners rely upon the provisions of §4, Art. 7, Constitution, §171 Burns 1926, and upon the cases of *Ex parte France* (1911), 176 Ind. 72, 95 N. E. 515, and *Curless* v. *Watson* (1913), 180 Ind. 86, 102 N. E. 497.

The right of appeal is not an inherent or inalienable right.[2] It is expressly guaranteed by some constitutions, but it is usually a right created by statute. Section 4, Art. 7, Constitution (§171 Burns 1926) provides that "the Supreme Court shall have jurisdiction co-extensive with the limits of the state in appeals and writs of error, under such regulations and restrictions as may be prescribed by law."[3] This provision of the Constitution does not define or mention the class of cases in which the Supreme Court shall have jurisdiction, *Lake Erie, etc., R. Co.* v. *Watkins* (1902), 157 Ind. 600, 607, 62 N. E. 443, and does not grant to litigants any right of appeal, *Pittsburgh, etc., R. Co.* v. *Hoffman* (1928), 200 Ind. 178, 194, 162 N. E. 403, although the creation of the Supreme Court by the Constitution is at least an implied declaration of that instrument that the right of appeal in some class of cases shall exist. *Lake Erie, etc., R. Co.* v. *Watkins, supra*, p. 507. The Legislature must give due regard to the supremacy of the Supreme Court, and it cannot

---

[2] Section 12, Art. 1, Constitution, §64 Burns 1926, providing that "all courts shall be open," etc., is fully satisfied by a trial in a court of competent jurisdiction in which the right to a jury, in proper cases, as guaranteed by the Constitution, is afforded. *Lake Erie, etc., R. Co.* v. *Watkins* (1902), 157 Ind. 600, 608.

[3] Writs of error have been "abolished" in Indiana, *Hornberger* v. *State* (1854), 5 Ind. 300, that is to say—our statutory appeal gives all the relief granted by the common-law writ of error and the original proceeding by appeal, introduced into equity practice from the civil law. *Pittsburgh, etc., R. Co.* v. *Hoffman* (1928), 200 Ind. 178, 194, 162 N. E. 403.

vest in any other tribunal final jurisdiction "of questions which require the highest expression of judicial judgment." *Ex parte France, supra,* at p. 95.

It is uniformly held, under constitutional provisions similar to our own, that the legislative department may, within reasonable limits, regulate and restrict the right of appeal (3 C. J. 318, 2 R. C. L. 29), and in *Lake Erie, etc., R. Co.* v. *Watkins, supra,* at p. 607, this court said:

"The legislature may not only from time to time enlarge such jurisdiction, but it may also contract the same as public policy may demand or require. It may designate the amount that may authorize an appeal, and within reasonable limits it may prescribe the class of cases in which appeals can be taken and from what courts or tribunals they may be prosecuted. The policy of the framers of our Constitution seems to have been, not to prescribe absolutely the boundaries or limits of the jurisdiction of our courts, but to allow a legislative discretion in that respect, in order that the varying demands and changing necessities of the people might be satisfied."

In civil cases where the amount in controversy does not exceed $50, no appeal is allowed, §1353 Burns 1926, unless the constitutionality of a law or the validity of a franchise or ordinance is duly presented, §1355 Burns 1926; and formerly no appeal was allowed in misdemeanor cases (see §1354 Burns 1926), unless the case came within the exception of §1355, *supra. Nichols* v. *State* (1901), 27 Ind. App. 444, 61 N. E. 694. It is thus apparent that the Legislature may, and formerly did, eliminate entirely (subject to the exception noted) appeals from judgments of trial courts in the class of cases which are involved in the cases at bar. It would be an anomalous situation if the Legislature could make the decision of the circuit court final in this class of cases by not allowing an appeal therefrom, yet would not have

the right to provide that such cases be appealed to and finally decided by the Appellate Court, the existence of which is authorized by law.

It is unnecessary to enter into an extended discussion of the questions presented by the cases of *Ex parte France, supra,* and *Curless* v. *Watson, supra,* because a different question is presented here than was presented in those cases. No attempt is made by the act of 1929 to confer jurisdiction upon the Appellate Court in "large and important classes of cases" or to make its decisions "final in all appeals over which it is given jurisdiction" or "to make the Appellate Court, within the jurisdiction conferred upon it, co-ordinate with the Supreme Court," which was the kind of jurisdiction conferred by the act of 1911, and which was held to be unconstitutional, *Ex parte France, supra,* at p. 90. On page 83 of the same case, the court quoted with approval the language used in *Bronson* v. *Studebaker* (1892), 133 Ind. 147, 150, 33 N. E. 98, where, after pointing out that the Supreme Court is made the highest judicial tribunal of the state by the Constitution, and that the legislature cannot lower its rank or deprive it of its ultimate judicial authority and power, the court said:

"The legislature cannot, under the guise of conferring inferior appellate jurisdiction upon other tribunals, grant them unlimited appellate jurisdiction, but it may grant such tribunals appellate jurisdiction by limiting it to classes of cases not of the highest grade, and restricting its authority to appeals from recoveries of a limited nature."

The jurisdiction here conferred upon the Appellate Court for a period of less than two years was final jurisdiction in a small and relatively unimportant class of cases, which, by the act, were made unappealable to the Supreme Court. This court recently, in reviewing the cases of *Ex parte France* and *Curless* v. *Watson,* said

that neither of these cases holds that the power to finally determine all appeals on their merits is given by the Constitution to the Supreme Court alone, but that they do uphold the power of the Supreme Court to finally declare legal principles. *Pittsburgh, etc., R. Co.* v. *Hoffman, supra.* The decisions of the Supreme Court are precedents binding upon the Appellate Court. That the Appellate Court, in the minor class of cases covered by this law would wilfully ignore such precedents is a possibility too slight to consider, and any inadvertent variance from these precedents could not become binding as a statement of the law. When cases arise wherein the Appellate Court believes that precedents of the Supreme Court are erroneous and ought not be followed, it may, and does, transfer them to the Supreme Court, with the recommendation that such precedents be over-ruled, §1357 Burns 1926. It may be that some of the statements made herein are not in complete accord with all that was said in the case of *Curless* v. *Watson, supra,* but it will be noted that none of the opinions filed in that case represented the view of a majority of the court, as then composed.

The various parts of a constitution, like the various parts of a statute, should be considered together in construing the meaning of the whole, and a consideration of §12, Art. 1, Constitution (§64 Burns 1926) providing that "justice shall be administered freely and without purchase, completely and without denial, speedily and without delay," in connection with §4, Art. 7, *supra,* confirms us in the conclusion we have reached and stated above. There were before this court at the time ch. 123, Acts 1929 was enacted several hundred appeals, a number of which had been pending on appeal for several years. The placing of the jurisdiction of the minor criminal appeals in the Appellate Court was undoubtedly done to help eliminate the congestion of

cases in the Supreme Court and it has resulted in the elimination of much delay in their decision, as well as in the decision of many other cases, civil as well as criminal, pending before the Supreme Court.

Our Constitution, which provides for the administration of justice without delay, also limits the membership of the Supreme Court to "not less than three nor more than five judges" §2, Art. 7, Constitution, §169 Burns 1926. When such a congestion of cases arises, which may not have been foreseen by the makers of the Constitution,[4] which would make impossible a compliance with §12, Art. 1, by the maximum number of judges to which the court is limited by §2, Art. 7, it becomes doubly important that §4, Art. 7 be given a practical construction which will harmonize it with the other provisions of the Constitution and will serve to give effect to all of them.

CHAPTER 123, ACTS 1929, NOT AN EX POST FACTO LAW.

Petitioners contend that in so far as the act of 1929 provides for the transfer of criminal cases pending in the Supreme Court, it is *ex post facto* (and, therefore, in violation of §24, Art. 1, Constitution [§72 Burns 1926] and void), "because it deprives the appellant of a substantial protection with which the existing law surrounded such person at the time of the alleged commission of the offense and his trial therefor."

---

[4]At the time of its adoption in 1851, the Constitution, by allowing an increase of judges from three to five, provided a method of obtaining relief from the congestion of cases in the Supreme Court which then existed. A fourth judge was added to the court in 1852, ch. 20, Acts 1852, but, by 1870, the docket was again crowded (I Monks, Courts and Lawyers of Indiana p. 258) and in 1872 a fifth judge was added, ch. 19, Acts 1872. Thereafter, Supreme Court Commissioners were provided for a time, ch. 17, Acts 1881; ch. 60, Acts 1883 (see, also, ch. 32, Acts 1889 and *State, ex rel.,* v. *Noble* [1889], 118 Ind. 350, 21 N. E. 244), and, in 1891, a temporary Appellate Court of five members was organized, which was later extended, increased to six members, and made permanent. §1344 Burns 1926, *et seq.; Pittsburgh, etc., R. Co.* v. *Hoffman* (1928), 200 Ind. 178, 162 N. E. 403.

An *ex post facto* law is a legislative act relating to criminal matters, retroactive in its operation, which alters the situation of an accused to his disadvantage, or deprives him of some lawful protection to which he is entitled, as —a law which imposes a punishment for an act which was not punishable when it was committed, which makes a crime greater than when it was committed or imposes additional punishment therefor, or which changes the rules of evidence by which less or different testimony is sufficient to convict. 12 C. J. 1099-1101; *Strong* v. *State* (1822), 1 Blackf. (Ind.) 193; *Fletcher* v. *Peck* (1810), 6 Cranch 87, 138, 3 L. Ed. 162. A litigant has no vested right in a remedy or mode of procedure, and where a law relates to matters of procedure merely, and does not deprive the accused of any substantial protection, it is not *ex post facto*. 12 C. J. 1103; *Sage* v. *State* (1891), 127 Ind. 15, 26 N. E. 667; *Robinson* v. *State* (1882), 84 Ind. 452; *Dinckerlocker* v. *Marsh* (1881), 75 Ind. 548.

## SUPREME COURT HAS JURISDICTION OF ALL APPEALS INVOLVING CONSTITUTIONAL QUESTIONS AND SUCH JURISDICTION IS NOT AFFECTED BY CH. 123, ACTS 1929.

It has been argued, in support of petitioners' contention that ch. 123, Acts 1929, is invalid, that such act, in the class of cases which it concerns, attempts to take from the Supreme Court its power and authority to decide questions affecting the constitutionality of statutes and affecting rights guaranteed by the Constitution. The power and authority to pass finally upon constitutional questions is one of the highest and most important functions or duties possessed and performed by this court. It cannot be performed by any other body, tribunal or court, but is a power inherent in the Supreme Court. The Legislature, recognizing this power, includes in the first class of cases which shall be

taken directly to the Supreme Court, "all cases in which there is in question, and such question is duly presented, . . . the constitutionality of a statute, state or federal, or rights guaranteed by the State or Federal Constitution." §1, ch. 201, Acts 1925; §1356, subd. 1, Burns 1926. A law attempting to take away this power and authority of the Supreme Court would be invalid, but we do not believe that ch. 123, Acts 1929 is such a law. It does not expressly attempt to give power to the Appellate Court to decide constitutional questions, nor does it in any manner attempt to repeal, amend or modify §1, ch. 201, Acts 1925. The jurisdiction of an appeal involving a constitutional question is in the Supreme Court, even though it is of a class of appeals that, under ch. 123, Acts 1929, would go to the Appellate Court if such constitutional question was not involved.

CH. 123, ACTS 1929 DOES NOT MODIFY OR CHANGE STATUTE
PROVIDING IF FOUR JUDGES OF THE APPELLATE
COURT SHALL NOT CONCUR IN THE RESULT
THE CASE SHALL BE TRANSFERRED TO
THE SUPREME COURT.

It may also be noted that ch. 123, Acts 1929, does not attempt to, and does not, repeal, amend or modify §12, ch. 247, Acts 1901 (§1351 Burns 1926) which provides that if four judges of the Appellate Court shall not concur in the result, the case shall be transferred to the Supreme Court.

CH. 123, ACTS 1929 CLASSIFIES CRIMES ON GRADE OF
OFFENSES RATHER THAN BY PENAL INSTITUTIONS.
WOMEN ENTITLED TO APPEAL TO SUPREME
COURT IN FELONY CASES.

The contention is advanced by some of the petitioners that §1, ch. 123, Acts 1929 (§2377.1 Burns Supp. 1929)

is invalid for the alleged reason that it denies to ▮▮▮ women convicted of felonies the right of appeal to the Supreme Court, which right is granted to others convicted of crimes of the same degree and in which the punishment is the same, except as to the place of imprisonment; and that, therefore, the classification of those who under the law are denied the right of appeal to the Supreme Court is unreasonable and arbitrary and in conflict with §23, Art. 1, Constitution; Art. 5, First Amendment United States Constitution; and Fourteenth Amendment United States Constitution. This contention is erroneous, for the reason that the act does not deny to women the right of appeal to the Supreme Court in felony cases. The classification of offenses made in the act, viz.:

"all appeals now pending or hereafter taken in criminal cases, where the penalty or punishment is not death, or imprisonment in the Indiana State Prison or in the Indiana Reformatory,"

rests upon the grade of offense as determined by the penalties inflicted therefor, rather than upon the institution in which the convict is to be imprisoned. The penalties prescribed in the criminal code for felonies uniformly designate the State Prison as the place of imprisonment without reference to sex. See, for example, §2412 Burns 1926, which defines murder and designates the Indiana State Prison as the place of imprisonment. No statute which prescribes a penalty designates the Woman's Prison as a place of imprisonment, but, if a female is convicted of this or any other felony, she is, under the provisions of a special statute, §12480 Burns 1926, sentenced to the Woman's Prison instead of the State Prison. It seems clear that there is no legislative intention here to classify appeals on the basis of the sex of the appellant, and that both males and females convicted of offenses (felonies) where the statutes

creating the offenses designate the State Prison as the place of imprisonment have the right to appeal to the Supreme Court (regardless of the fact that the act fails to mention the Woman's Prison). In the two appeals of Hall herein, the appellant is a woman, and, in the appeal of Hantz, et al., one of the appellants is a woman. These appellants were convicted of misdemeanors only, were given short sentences in the correctional department of the Woman's Prison, and the jurisdiction of their appeals under the 1929 act was properly in the Appellate Court.

PETITIONS TO TRANSFER UNDER §1357 BURNS 1926 INEFFECTIVE IN MISDEMEANOR CASES CONTROLLED BY CH. 123, ACTS 1929.

In the appeals of Brown, Duvall, Robbins, Holton and Isabel, the appellants have filed petitions in the form of applications for transfer as provided by §1357 Burns 1926. These applications are filed on the theory that ch. 123, Acts 1929, §2377.1 Burns Supp. 1929 was effective to confer jurisdiction of their appeals upon the Appellate Court, but that such act could not validly provide that the decision of the Appellate Court should in such cases be final. Having decided that such law does confer final jurisdiction upon the Appellate Court in the class of cases covered by its provisions, it follows that the application to transfer under §1357 Burns 1926 is inapplicable and ineffective in these appeals.

## MANDATE.

Each of the several petitions in the cases, the titles and numbers of which are set out in the caption hereof, is denied.

Myers, C. J., and Travis, J., concur in the result.

## Concurring Opinion.

Myers, C. J.—I concur in the result reached in the majority opinion herein, but disagree with the expressions in the opinion which seem to recognize that jurisdiction of courts in cases on appeal may be made to depend upon whether they are classified as large or important, or inferior, minor or unimportant. In this state we have two courts—Supreme and Appellate—vested with appellate jurisdiction. The Supreme Court was created by our state Constitution and the Appellate Court by an act of the General Assembly. At present, the judgment of the Appellate Court is final except upon a showing to the Supreme Court by the losing party that the opinion "of the Appellate Court contravenes a ruling precedent of the Supreme Court, or that a new question of law is directly involved and was decided erroneously." §1357 Burns 1926, cl. 2. The foregoing questions are decided by the Supreme Court upon the face of the opinion of the Appellate Court regardless of anything otherwise disclosed by the record. *In re Aurora Gaslight, etc., Co.* (1917), 186 Ind. 690, 115 N. E. 673; *Julian* v. *Bliss* (1925), 196 Ind. 68, 70, 147 N. E. 148.

The majority opinion does not indicate any certain standard by which the above-mentioned classification could be made with any degree of certainty which should be attained as near as possible in judicial procedure. The lack of some reasonably safe rule by which jurisdiction of the courts may be readily determined would invoke endless disputes and a variety of opinions, not only by members of the bar, but among members of the appellate bench as well. To inject into our law of appellate procedure anything that would lead to uncertainty of action should be unqualifiedly disapproved.

The several petitions to transfer, in some form or other, challenge the constitutionality of ch. 123, Acts

1929, p. 429. The various contentions, in their last analysis, present the question whether or not a party affected by a judgment in a trial court from which he may appeal, is entitled, as a constitutional right, to have his case reviewed by the Supreme Court.

The thought advanced by counsel in support of their insistence that an appeal once taken from a *nisi prius* court cannot be stopped by legislative action short of the Supreme Court, in some form, rests in a large measure upon the theory that if the Legislature has power to give the Appellate Court final jurisdiction of cases classified according to subject-matter, the door will be opened for it to abolish the Supreme Court.

I am not ready to concede that any one of the three departments of government established by our state Constitution will so far forget itself as to intentionally exceed its constitutional authority by doing anything not clearly within the prescribed and well-defined limitations of its activities. The Constitution is the supreme law, to be respected alike by the Legislature and by the courts. Each acts independently of the other. The powers of each emanate from the same source and are circumscribed by the one instrument, which, under the sanctity of an oath, the personnel of each department is bound to support. Nor may any one, directly or indirectly, assume or destroy the functions of the others, or interfere with the others in the exercise of its proper authority without violating the supreme law. *State, ex rel.,* v. *Noble* (1889), 118 Ind. 350, 21 N. E. 244, 4 L. R. A. 101, 10 Am. St. 143; *Ex parte Griffiths, Reporter* (1889), 118 Ind. 83, 20 N. E. 513, 3 L. R. A. 398, 10 Am. St. 107. In this state, the authority of the Legislature to make laws and the courts to construe them, I assume will not be questioned. Laws thus enacted and not constitutionally inhibited must stand, regardless of the inducement for their making.

The people of this state, in choosing their own form of government, adopted a constitution, which took effect November 1, 1851, whereby all judicial power of the state was "vested in a Supreme Court, in circuit courts, and in such inferior courts as the general assembly may establish." Art. 7, §1. In 1881, that section was amended by substituting the word "other" for the word "inferior." The Supreme Court then had and now has "jurisdiction co-extensive with the limits of the state in appeals and writs of error, under such regulations and restrictions as may be prescribed by law." Art. 7, §4. By these constitutional provisions, the judicial power of this state is in the courts, and the territorial jurisdiction of the Supreme Court thus fixed is not subject to change by the General Assembly. *State, ex rel.,* v. *Noble, supra.* The subjects—appeals and writs of error—over which this court is given jurisdiction, are subject to "such regulations and restrictions as may be prescribed by law." There must have been a reason for this qualifying clause, which, to my mind, is clearly apparent. By §2 of the same article, the number of judges composing the Supreme Court was limited to not less than three nor more than five. The makers of the Constitution had in mind that should the time come when the number of judges so limited could not do the work assigned to them within a reasonable time consistent with §12 of the Bill of Rights, the General Assembly would be in a position to remedy the situation by establishing "other courts" and vest them with such appellate jurisdiction as the exigencies of the business in the Supreme Court might demand. The Constitution, fairly interpreted, provides for only one Supreme Court in this state, and giving the word "supreme" its ordinarily understood meaning—"highest in authority or power," Webster—it follows, as a natural sequence, that "such other courts as the General Assembly may establish" must be treated

as inferior in power to the Supreme Court. The power of the General Assembly to establish "other courts" having appellate jurisdiction must necessarily carry with it the authority to vest jurisdiction in such courts to decide the questions presented finally, for the reason a litigant has no constitutional right to have his case decided by any particular court other than one of competent jurisdiction. *Lake Erie, etc., R. Co.* v. *Watkins* (1902), 157 Ind. 600, 605, 608, 62 N. E. 443.

The clause "under such regulations and restrictions as may be prescribed by law" (§4, *supra*) in no manner affects the power or jurisdiction of this court. It merely reserves the right to regulate and restrict appeals. It has to do with a matter which affects the people— remedy of litigants.

The abolishment of writs of error in this state by the Legislature leaves the statutory right of appeal as the only method of reviewing questions of law in cases where an appeal is allowed to a court having appellate jurisdiction, but the right to come to this court is a question for the Legislature, for, as said in *Lake Erie, etc., R. Co.* v. *Watkins, supra:* "While it is certainly true that the legislature under this provision of our fundamental law (Art. 7, §4) is not authorized to deprive the Supreme Court entirely of its appellate jurisdiction, still the legislature may not only from time to time enlarge such jurisdiction, but it may also contract the same as public policy may demand or require. It may designate the amount that may authorize an appeal, and, within reasonable limits, it may prescribe the class of cases in which appeals can be taken, and from what courts or tribunals they may be prosecuted. The policy of the framers of our Constitution seems to have been not to prescribe absolutely the boundaries or limits of the juris-

diction of our courts, but to allow a legislative discretion in that respect in order that the varying demands and changing necessities of the people might be satisfied."

As I am at present advised, I would have this court declare that our General Assembly has the power to so regulate our appellate procedure that causes on appeal may be classified according to subject-matter involved, and that jurisdiction be determined accordingly for final disposition in the court to which the class is assigned, reserving to the Supreme Court, however, all appealed cases at present classified by our Code (§1356 Burns 1926, cl. 1) wherein there is "in question, and such question is duly presented, either the validity of a franchise or the validity of an ordinance of a municipal corporation, or the constitutionality of a statute, state or federal, or the rights guaranteed by the state or Federal Constitution." The causes thus classified in case of appeal should be taken from the trial court direct to the Supreme Court for the reason they naturally involve questions of a public nature and ordinarily affect the public generally, and should be "finally determined by this court, and by this court alone." *City of Indianapolis* v. *Navin* (1897), 151 Ind. 139, 158, 47 N. E. 634, 51 N. E. 80, 41 L. R. A. 337. Furthermore, as the Supreme Court, under our Constitution, must be regarded as the highest judicial tribunal having appellate jurisdiction within this state, it must be regarded as having the power not only to determine its own jurisdiction, but to determine finally the jurisdiction of other courts in this state. *Pittsburgh, etc., R. Co.* v. *Peck* (1909), 172 Ind. 562, 577, 88 N. E. 939.

For further discussion of the principles underlying the decision which should be considered affecting the questions here involved, see dissenting opinion in *Ex parte France* (1911), 176 Ind. 72, 104, 95 N. E. 515.

In my judgment, the prevailing opinion in *Ex parte*

*France, supra,* and in *Curless* v. *Watson* (1913), 180 Ind. 86, 102 N. E. 497, should be overruled.

Travis, J., concurs.