

**FILED**

Dec 18 2014, 10:27 am

**CLERK**
of the supreme court,
court of appeals and
tax court

## FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**JON LARAMORE**
**A. SCOTT CHIN**
**ANNE K. RICCHIUTO**
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**KARL L. MULVANEY**
**MARGARET M. CHRISTENSEN**
Bingham Greenbaum Doll, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GILDA ORANGE, *et al*., Members of the Common Council of the City of East Chicago, Indiana, | ) ) ) ) | |
| Appellants/Defendants, | ) ) | |
| vs. | ) ) | No. 45A03-1310-PL-414 |
| HON. SONYA A. MORRIS, as Judge of the City Court of the City of East Chicago, Indiana, | ) ) ) ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Special Judge
Cause No. 45C01-1302-PL-12

**December 18, 2014**

**OPINION – FOR PUBLICATION**

**BRADFORD, Judge**

# CASE SUMMARY

In 2012, Appellants/Defendants Gilda Orange, *et al*., in their capacities as members of the Common Council of the City of East Chicago, Indiana (collectively, "the Council"), reduced by $82,000 the 2013 budget of the City Court of the City of East Chicago, Indiana ("the City Court"), which is presided over by Appellee/Plaintiff the Honorable Sonya A. Morris, Judge. In October of 2012, Judge Morris filed a verified complaint in mandamus in Lake Circuit Court, seeking an order that the Council fully fund the City Court's requested budget for 2013 and that the Council also pay the City Court's reasonable expenses in prosecuting the action. The Council moved to dismiss Judge Morris's complaint on the ground that it did not use the Indiana Supreme Court's judicial assignment process as outlined in Indiana Trial Rule 60.5.

Special Judge George C. Paras was appointed to hear the complaint, denied the Council's motion to dismiss, and held trial. Following trial, Judge Paras ordered the Council to appropriate an additional $65,000 to fund the City Court ("the Mandate") and for each party to pay its own expenses and attorney's fees. The Council contends that (1) Judge Morris failed to meet her burden to establish that the mandated funds were reasonably necessary to operate the City Court, (2) Judge Morris should have been required to use the judicial appointment process of Trial Rule 60.5, (3) existing probation funds could have cushioned the effect of budgetary cuts, and (4) the Council's appeal is not moot. The City Court counters that (1) the Mandate was necessary to preserve the judicial independence of the City Court, (2) the mandated funds are reasonably necessary to fund court operations, (3) the Council failed to establish that the City Court's budget is

2

excessive or that East Chicago could not fund the budget, and (4) the City Court is entitled to appellate attorney's fees and expenses. We consolidate and restate the issues as (1) whether Judge Morris produced sufficient evidence to support the mandate of funds, (2) whether Judge Morris should have been required to use the procedure outlined in Trial Rule 60.5, and (3) whether the City Court is entitled to appellate attorney's fees and expenses. We affirm the judgment of the trial court and remand for calculation of the City Court's appellate attorney's fees and expenses.

## FACTS AND PROCEDURAL HISTORY

In 2004, Judge Morris was elected City Court Judge. At the time, the City Court was allotted twenty employees, including her. Since 2004, the City Court has lost five employees and hired one, which means that the City Court's 2013 budget includes seventeen employees, including Judge Morris. The City Court's budget for salaries was $599,900.00 in 2002, $651,777.00 in 2009, and $513,344.00 in 2012.

Meanwhile, in the spring of 2012, the Council began to consider creating a budget that decreased spending without creating the need to lay off numerous employees. East Chicago's revenue had decreased in recent years due to declining tax revenue from the local casino, property tax caps, and the economic downturn at the time. The Council reduced East Chicago's 2013 budget by approximately fifteen percent as compared to the 2012 budget, from $30.7 million to $25.9 million. In the East Chicago budget ordinance adopted on October 25, 2012, the Council decreased the City Court's budget from its 2012 level of $832,800.00 by $83,000.00. As a result of the City Court's budget reduction, Judge Morris filed a verified complaint in mandamus on October 25, 2012, in

3

Lake Circuit Court. On December 3, 2012, the Council filed a motion to dismiss on the ground that Judge Morris's mandate action was required to have been filed as an original action in the Indiana Supreme Court pursuant to Indiana Trial Rule 60.5. In December of 2012, Judge Morris filed a motion for change of judge. On January 14, 2013, the Honorable George Paras was appointed special judge and denied the Council's motion to dismiss on June 4, 2013. After unsuccessful mediation, Judge Paras heard the case on September 25, 2013.

Evidence presented by Judge Morris at trial indicates that the City Court faces challenges arising from the population it serves. Many persons charged with crimes in the City Court do not have the ability to pay fines and court costs, and many have difficulty satisfying the fifty-dollar public defender fee. The median income in East Chicago is far less than in the neighboring Lake County cities of Merrillville and Schererville. It is not appropriate to fine all guilty defendants the maximum amount authorized because, as Judge Morris testified, "[w]e want to rehabilitate. We do not want to bog defendants down with fees and fines and costs that we know they cannot pay." Tr. p. 75. The City Court seeks out alternatives to sentencing, such as treatment for addiction or driving school, services which add to the workload of the City Court staff.

Evidence was presented that the City Court faces other fiscal challenges arising from staffing requirements. East Chicago's Hispanic population is greater than in most other parts of Lake County, and the City Court employs two probation officers who speak Spanish. The City Court must also maintain the staff necessary to serve process and provide court security, as those functions are no longer provided by the Lake County

4

Sheriff or the East Chicago Police Department. City Court bailiffs are responsible for service of court papers, screening court attendees for weapons, maintaining safety during prisoner transport, and maintaining court security. Judge Morris testified that each of the City Court's employees is necessary for the court to properly function and that, in the absence of additional funding, the City Court would not have been able to continue to pay salaries and would have had to close on October 11, 2013. Judge Morris testified that the City Court required $65,000.00 for proper operation of the court in the fiscal year 2013.

Dr. James Barnard testified for the City Court and opined that the City Court's budget aligned with the per capita spending of East Chicago. Relying on a report by the Indiana Department of Local Government, Dr. Barnard concluded that the neighboring municipalities of Merrillville and Schererville allocate twice as much to the local court salaries as does East Chicago. The City Court's budget was less than two percent of East Chicago's total budget, while the court budgets of Merrillville and Schererville were over four percent of the total budgets. The Council has money available from a gaming fund and transferred between three and five million dollars from that fund to East Chicago's general fund to balance the 2012 budget, and between two and three million dollars to balance the 2013 budget.

The Council's position in the trial court was that the City Court's budget reduction was warranted and that it should make up any budget shortfall with probation user fees. (Tr. 11-12, 102). At the end of June 2013, the City Court's adult probation fund stood at approximately $165,000.00 on hand. The City Court generates between $17,000.00 and $19,000.00 in probation fees annually, which the City Court allocates for operational

5

expenses of the probation department. The City Court's probation department is the largest department in the court, using most of the copiers, paper, and other assorted supplies.

On October 8, 2013, Judge Paras issued his order, which provides as follows:

ORDER ON COMPLAINT FOR MANDAMUS
AND/OR PERMANENT MANDATORY INJUNCTION

Plaintiff appeared with attorney Jon Schmoll, Defendant Lenny Franciski appeared with attorney Stephen Bower, and all other Defendants appeared by attorney Stephen Bower, on September 25, 2013. Case submitted to the Court on the issues of Plaintiffs Verified Complaint in Mandamus and/or for Preliminary and Permanent Mandatory Injunction. Upon careful consideration of the evidence and arguments presented, the Court now rules as follows:

1. Plaintiff's 2012-2013 court budget is reasonable and necessary for the efficient operation of the East Chicago City Court, and therefore the Court grants a permanent injunction enjoining the Defendants from forcing mandatory cuts in said budget.

2. The evidence showed that the difference between the amounts budgeted for the operation of the East Chicago City Court and the funds appropriated for that purpose by Defendant Common Council of East Chicago produces a shortfall of approximately $65,000.

3. The evidence showed that there are funds in the approximate amount of $150,000 in the court's adult probation user fee account; each year this fund grows by between $17,000 and $19,000.

4. Pursuant to IC § 35-38-2-l(h), adult probation funds can be used to fund probation services and to supplement salaries for probation officers. However, the Court does not have the authority to compel use of these funds.

5. The Court may suggest Plaintiff adjust her budget and staffing to more efficiently utilize the available adult probation funds.

6. Accordingly, Plaintiff's request for a mandate to increase the appropriation for the operation of the East Chicago City Court is hereby GRANTED.

7. Defendants are hereby ORDERED to appropriate the additional funds in the amount of $65,000.00 to adequately fund the East Chicago City Court.

8. Each party shall be responsible for his or her own attorney fees and litigation costs incurred herein.

6

Appellant's App. pp. 11-12.

## DISCUSSION

"[A] mandate proceeding is not a review of whether the position taken by the governmental entity with regard to court operations is arbitrary or capricious." *In re Assignment of Courtrooms, Judge's Offices, & Other Court Facilities of St. Joseph Superior Court*, 715 N.E.2d 372, 375 (Ind. 1999). "Rather, in a mandate proceeding, the special judge is reviewing the order of mandate against the legal standards that must be met before such an order may be given force." *Id.* "[T]he central issues in a mandate proceeding are whether the order of mandate is reasonably necessary for the operation of the courts and court-related functions and whether any other governmental interests are so adversely affected as to require that the order be set aside." *Id.* (citing *Morgan Circuit Court v. Morgan Cnty. Council*, 550 N.E.2d 1303, 1304 (Ind. 1990)). "The annual salaries of court employees fall within a court's mandate authority and may be ordered paid at levels sufficient to attract and retain qualified persons." *Order for Mandate of Funds Montgomery Cnty. Council v. Milligan*, 873 N.E.2d 1043, 1045-46 (Ind. 2007) (citing *Morgan Circuit Court*, 550 N.E.2d at 1304)). "Salaries for comparable positions in both the public and private sectors are relevant." *Id.* at 1046 (citing *Morgan Circuit Court*, 550 N.E.2d at 1304)). A court need not wait to take action until the court's operation actually has been impaired, but may act once there is a clear and present danger of impairment. *Id.* (citing *Morgan Circuit Court*, 550 N.E.2d at 1304)). "When we review the mandate decree of the special judge, we do not ordinarily reevaluate the evidence and we will affirm the decree if there is substantial evidence of probative value

7

to support the judgment." *St. Joseph Superior Court*, 715 N.E.2d at 375. (citing *In re Mandate of Funds for the Brown Circuit Court*, 507 N.E.2d 583, 584 (Ind. 1987)).

### *Direct Appeal Issues*

### I.  Whether Judge Morris Established that the Mandated Funds Are Reasonably Necessary to Operate the City Court

The Council argues that Judge Morris failed to carry her burden to establish that the mandated funds are reasonably necessary to operate the City Court, specifically that she failed to show a clear and present danger of impairment of the City Court's operations and that the requested funds were critical.  The Council argues that Judge Morris did not establish why the City Court could not shoulder a proportionate share of the cuts being made across all of East Chicago's government.

### A.  Judge Morris's Burden

Judge Morris presented evidence that the City Court's budget was a lower percentage of East Chicago's budget as compared to court budgets in other Lake County municipalities.  Judge Morris presented evidence that the City Court's total outlay for salaries was lower in 2012 than it had been in 2002.  Judge Morris presented evidence that the City Court faced fiscal challenges due to characteristics of East Chicago's population, including a low average income and a high percentage of Spanish speakers. Judge Morris testified that every City Court employee was necessary to ensure proper court operations and the City Court would have to cease operations if it did not receive the requested funds.  All of this, especially Judge Morris's testimony that the City Court would have to cease operations in the absence of the requested funds, is sufficient to

8

establish a clear and present danger of impairment of operations. Considering only the evidence favorable to the trial court's judgment, as we must, the evidence establishes that the requested funds were reasonably necessary for City Court operation.

## B. The Council's Evidence

The Council presented evidence of declining tax revenues, property tax caps, and the general economic downturn and that the City Court's budget was being cut by a smaller percentage than East Chicago's overall budget. The Council's financial advisor, Karl Cender, testified and prepared a report comparing East Chicago's budget and operations to three other cities in Lake County with similar populations: Hobart, Merrillville, and Schererville. Cender found that East Chicago spends nearly three times the amount of the other three cities on each case that goes through the City Court. East Chicago also spends more than twice as much per capita on each case than the other cities. In 2011, East Chicago spent $513,345.00 on City Court salaries while Hobart, Merrillville, and Schererville spent $298,108.00, $351,791.00, and $289,317.00, respectively, for their city or town court salaries.

Evidence was also presented that the City Court's numerical caseload for 2009-11 was substantially lower than that of the city or town courts in the other three cities in Cender's report:

| Year | East Chicago | Hobart | Merrillville | Schererville |
|------|--------------|--------|--------------|--------------|
| 2009 | 3767 | 5764 | 11571 | 7075 |
| 2010 | 3739 | 4434 | 11560 | 6093 |

9

| 2011 | 3613 | 4419 | 13459 | 4975 |
| --- | --- | --- | --- | --- |

Appellant's App. p. 45. Cender conceded, however, that his analysis of the four municipalities did not include comparing the percentage of court budgets taken up by salaries. Additionally, nobody from the Council visited the City Court, the East Chicago clerk's office, or the courts in the other three municipalities and viewed their operations. The Council also did not consider budget reductions already made by the City Court, develop any understanding of court administration, or make an independent determination of the reasonableness of the City Court's operations before cutting its budget by ten percent. Significantly, none of this evidence targets any specific areas where the City Court might reasonably implement cost-cutting measures, nor does it tend to show how giving the funds to the City Court would adversely affect any other function of city government. *See St. Joseph Superior Court*, 715 N.E.2d at 375.

The Council did suggest in the trial court that the City Court could make up its budget shortfall, at least in part, by accessing the adult probation fund. As Judge Morris points out, however, using probation funds to support ongoing court operations unrelated to probation would violate Indiana law, specifically Indiana Code section 35-38-2-1(h): "the county or local supplemental adult probation services fund may be used only to supplement probation services and to supplement salaries for probation officers. A supplemental probation services fund may not be used to replace other funding of probation services." Consistent with this statutory authority, according to a document from the Indiana State Board of Accounts Accounting and Uniform Compliance

10

Guidelines Manual for Town and City Courts, "[t]he local supplemental adult probation services fund may be used only to supplement probation services and to supplement salaries for probation officers." Defendant's Ex. J.

Additionally, Judge Morris notes that there are sound policy considerations for limiting the uses to which probation funds may be put. Judge Morris argues that the City Court should not be put in a position where the decision to place or not to place a particular criminal defendant on probation is affected by fiscal concerns. As the Indiana Supreme Court has explained,

> Probation users' fees are imposed on persons convicted of crimes. The Due Process Clause of the U.S. Constitution and analogous protections under the Indiana Constitution limit the amount and circumstances under which probation users' fees and other conditions may be imposed on criminal defendants. *See Gordy v. State*, 674 N.E.2d 190, 192 n. 3 (Ind. Ct. App. 1996) (outlining balancing test used to determine whether a probation condition impermissibly infringes upon a probationer's constitutional right). While generally speaking a reasonable user's fee may be appropriate, *see United States v. Sperry Corp*., 493 U.S. 52, 60-63, 110 S. Ct. 387, 107 L Ed. 2d 290 (1989), to the extent that ongoing court or even probation operations would be dependent upon revenue raised by the imposition of probation users' fees, these constitutional limitations might well be threatened by the need for revenue. For similar reasons, the independence that judges enjoy to decide when a person convicted of a crime is to be sentenced to probation, [*Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007)], also cannot be impinged upon by the need for revenue. Judicial independence demands that sentencing decisions be entirely free of court and probation fiscal considerations. As discussed in Part II, *infra*, the responsibility for appropriating money from the fund is the responsibility of the council, not the judges, and a blurring of the line of responsibility might threaten the constitutional separation of functions in article III of the Indiana Constitution.

*Clark Cnty. Council v. Donahue*, 873 N.E.2d 1038, 1042 (Ind. 2007).

It almost goes without saying that we do not support any scheme under which a

court's decision to impose probation is influenced, even in part, by the need to raise revenues. Overall, we conclude that there is sufficient substantial evidence to support the trial court's judgment.[1]

## II. Whether Judge Morris Should Have Been Required to Use The Mandate Procedure Outlined in Trial Rule 60.5

The Council contends that Judge Paras erred in denying Judge Morris's complaint in mandamus because she bypassed the procedural requirement of Trial Rule 60.5. Indiana Trial Rule 60.5 governs generally the mandate of funds by a court, and provides as follows:

> **(A) Scope of mandate.** Courts shall limit their requests for funds to those which are reasonably necessary for the operation of the court or court-related functions. Mandate will not lie for extravagant, arbitrary or unwarranted expenditures nor for personal expenditures (e.g., personal telephone bills, bar association memberships, disciplinary fees). Prior to issuing the order, the court shall meet with the mandated party to demonstrate the need for said funds. At any time in the process, the dispute may be submitted to mediation by agreement of the parties or by order of the Supreme Court or the special judge.
> **(B) Procedure.** Whenever a court, except the Supreme Court or the Court of Appeals, desires to order either a municipality, a political subdivision of the state, or an officer of either to appropriate or to pay unappropriated funds for the operation of the court or court-related functions, such court shall issue and cause to be served upon such municipality, political subdivision or officer an order to show cause why such appropriation or payment should not be made. Such order to show cause shall be captioned "Order for Mandate of Funds". The matter shall be set for trial on the merits of such order to show cause unless the legislative body, the chief executive officer or the affected officer files a waiver in writing of such a trial and agrees to make such appropriation or payment. The trial shall be

---

[1] Judge Morris also argues that denying her the mandated funds would violate the separation of powers doctrine. As the Council points out, however, the separation of powers doctrine does not apply at the local level. "[I]t has repeatedly been held that the separation of powers doctrine of Article III has no application at the local level." *Willsey v. Newlon*, 161 Ind. App. 331, 333, 316 N.E.2d 390, 391 (1974) (citing *Mogilner v. Metro. Plan Comm'n of Marion Cnty.*, 236 Ind. 298, 318, 140 N.E.2d 220, 230 (1957); *Baltimore & Ohio R.R. Co. v. Town of Whiting*, 161 Ind. 228, 233, 68 N.E. 266, 268 (1903)).

without a jury, before a special judge of the court that made the order. There shall be no change of venue from the county or from the special judge appointed by the Supreme Court. The court shall promptly notify the Supreme Court of the entry of such order to show cause and the Supreme Court shall then appoint as special judge an attorney who is not a current or former regular judge and who does not reside nor regularly practice law in the county issuing the Order of Mandate of Funds or in any county contiguous thereto. If the appointed judge fails to qualify within seven [7] days after he has received notice of his appointment, the Supreme Court shall follow the same procedure until an appointed judge does properly qualify. Unless expressly waived by the respondent in writing within thirty (30) days after the entering of the trial judge's decree, a decree or order mandating the payment of funds for the operation of the court or court-related functions shall be automatically reviewed by the Supreme Court. Promptly on expiration of such thirty (30) day period, the trial judge shall certify such decree together with either a stipulation of facts or an electronic transcription of the evidence to the Supreme Court. No motion to correct error nor notice of appeal shall be filed. No mandate order for appropriation or payment of funds made by any court other than the Supreme Court or Court of Appeals shall direct that attorney fees be paid at a rate greater than the reasonable and customary hourly rate for an attorney in the county. No mandate order shall be effective unless it is entered after trial as herein provided and until the order has been reviewed by the Supreme Court or such review is expressly waived as herein provided.

Here, Judge Morris did not issue a rule to show cause to East Chicago and the Indiana Supreme Court did not appoint a special judge pursuant to subsection (B). The Council argues that Judge Morris was required to adhere to Rule 60.5's procedural requirements but did not. Judge Morris counters that city courts are exempt from Rule 60.5's procedural requirements pursuant to the Indiana Supreme Court's decision in *Gary City Court v. City of Gary*, 489 N.E.2d 511 (Ind. 1986).

In *Gary City Court*, the Gary City Court issued a mandate order to the Gary mayor, controller, and city council, pursuant to the provisions of Trial Rule 60.5. *Id.* at 511. The Indiana Supreme Court, however, noted that "[c]aselaw demonstrates that the

path followed heretofore by courts of limited and inferior jurisdiction has been to exercise the basic authority by the filing of an independent action for mandate against the proper municipal authorities in a trial court of general jurisdiction." *Id.* at 512 (citing *Hatcher v. State ex rel. Work*, 268 Ind. 468, 376 N.E.2d 1115 (1978); *McAfee v. State ex rel. Stodola*, 258 Ind. 677, 284 N.E.2d 778 (1972)). The court reasoned and held as follows:

> This court's purpose in adopting Ind. R. Tr. P. 60.5 was to provide an immediate, expeditious, and simple review process, when a trial court took the extreme step of issuing a mandate order and local authorities had genuine fiduciary concerns. It was contemplated that on the one hand, extreme local conditions could result in the total cessation of all court operations, while on the other hand a trial judge might make an extravagant and unwarranted order.
>
> Underlying concerns of the same nature exist in the case of the operation of a city court, although they are not of the same magnitude. City courts are subject to establishment and abolition by city ordinance. I.C. 33-10.1-1-3.[2] The office of city judge is filled in municipal elections which tend to be smaller and more personal. The court has both limited civil and criminal jurisdiction, and many do not entertain civil cases at all. Judgments of such courts are subject to being immediately interdicted by appeal to the trial courts in the judicial circuit, where the case is subject to being retried de novo. I.C. 33-10.1-5-9.[3] In light of these characteristics, we find that the avenue previously followed via the filing of an independent action in a circuit or superior court, provides adequate protection for the financial support and independence of city courts, and hold that such avenue must be followed by them. We consequently declare that in future cases of this nature, Ind. R. Tr. P. 60.5 will not apply.

*Gary City Court*, 489 N.E.2d at 512.

Judge Morris relies on *Gary City Court* as authority justifying her filing a complaint in mandamus in Circuit Court instead of issuing a mandate order. The Council

---

[2] Current version at Ind. Code § 33-35-1-1.

[3] Current version at Ind. Code § 33-35-5-9.

14

argues in its Brief of Appellant that the basis for *Gary City Court* has eroded over the years and that, in light of a recent Indiana Supreme Court decision, may no longer be good law. Specifically, the Council argues that (1) the Indiana Supreme Court has not amended Trial Rule 60.5 to remove the reference to "municipalities" in the almost thirty years since issuing *Gary City Court*; (2) the court's decision in *In re Mandate of Funds for Center Township of Marion County Small Claims Court*, 989 N.E.2d 1237, 1238 (Ind. 2013), has potentially superseded *Gary City Court*; and (3) there is no longer a logical basis for treating city courts differently under Trial Rule 60.5.

Whatever the merits of the Council's arguments in the abstract, the Council itself concedes in its Reply Brief (and conceded again at oral argument) that *City of Gary* remains good law and is therefore absolutely binding on this court.

> We are bound by the decisions of our supreme court. *See In re Petition to Transfer Appeals*, 202 Ind. 365, 376, 174 N.E. 812, 817 (1931). Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment. *Id.* While Indiana Appellate Rule 65(A) authorizes this Court to criticize existing law, it is not this court's role to "reconsider" supreme court decisions.

*Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002), *trans. denied*. Consequently, we are constrained to conclude that Judge Morris used the proper procedure to prosecute her mandate action and we need not address the Council's arguments further.

### *Cross-Appeal Issue*

### III.  The City Court's Appellate Attorney's Fees and Expenses

Judge Morris contends that the City Court is entitled to have its appellate

15

attorney's fees[4] and expenses paid by the Council. "In a mandate proceeding, both sides are entitled to have their attorney fees paid by order of the special judge." *In re Mandate of Funds in the Harrison Superior Court*, 674 N.E.2d 555, 558 (Ind. 1996). The Council, however, argues that the authority for the mandatory award of fees to a court seeking a mandate flows from Trial Rule 60.5, which does not apply to city courts.

We agree with Judge Morris on this point. The authority for the mandatory award of attorney's fees to a judge seeking a mandate is not found in Trial Rule 60.5, but in the general nature of the proceeding. The Indiana Supreme Court first enunciated the rule in *Hale v. Smith*, 271 Ind. 92, 390 N.E.2d 645 (1979). The court justified the rule as follows:

> In the case at bar Judge Smith issued the mandate in his official capacity not for his own pecuniary reward, but for the purpose of meeting the operational needs of the Sullivan County Court. The court reporter and bailiff are to receive the salaries, and the Sullivan County judicial system will reap the benefits thereby. In light of this, this court proceeding is properly to be viewed for these purposes as a dispute between two arms of the county government and in court both are appropriately to be represented by counsel and the fees of such counsel should be paid by the county.

*Id*. at 96, 390 N.E.2d at 648. This rationale applies with equal force in this case, where Judge Morris sought a mandate not for her own pecuniary reward, but for the purpose of meeting the needs of the City Court. The only differences, the relevance of which the Council does not explain, are that this case involves a dispute between two arms of *city* government and that the procedure outlined in Trial Rule 60.5 was not used.

In any event, Trial Rule 60.5 has only the following to say regarding attorney's

---

[4] Judge Morris clarified at oral argument that the City Court was seeking only its appellate attorney's fees and expenses, as litigation below was not handled by outside counsel.

fees: "No mandate order for appropriation or payment of funds made by any court other than the Supreme Court or Court of Appeals shall direct that attorney fees be paid at a rate greater than the reasonable and customary hourly rate for an attorney in the county." The plain language of Rule 60.5 does not explicitly mandate the award of attorney's fees and expenses, only that any fees awarded be reasonable. The case-law authority for the mandatory award of attorney's fees in mandate cases applies here, even though Trial Rule 60.5 does not. Judge Morris is entitled to the award of appellate attorney's fees and expenses pursuant to *Hale* and its progeny. We therefore remand for the calculation of the City Court's reasonable appellate attorney's fees and expenses.[5]

## CONCLUSION

We conclude that because Judge Morris carried her burden to establish that the requested funds were reasonably necessary, the trial court did not err in granting her mandate request. We further conclude that Judge Morris used the proper procedure to prosecute her mandate action and so will not reverse the judgment of the trial court on that basis. Finally, we conclude the City Court is entitled to an award of its appellate attorney's fees and expenses and so remand for calculation of those fees and expenses.

We affirm the judgment of the trial court and remand with instructions.

BARNES, J., and BROWN, J., concur.

---

[5] Because we conclude that Judge Morris is entitled to an award of the City Court's appellate attorney's fees pursuant to *Hale*, we need not address her claim that she is entitled to them pursuant to Indiana Code section 34-52-1-1.

17