In the Matter of ASSIGNMENT OF COURTROOMS, JUDGE'S OFFICES, AND OTHER COURT FACILITIES OF the ST. JOSEPH SUPERIOR COURT.

No. 71S00–9901–MF–57.

Supreme Court of Indiana.

Aug. 27, 1999.

George T. Patton, Jr., Monique C. Winkler, Bose McKinney & Evans, Indianapolis, Indiana, Attorneys for Respondent Board of Commissioners of St. Joseph County.

James A. Masters, Nemeth Feeney & Masters, P.C., South Bend, Indiana, Attorney for Petitioner St. Joseph Superior Court.

PER CURIAM

*I. Procedural background*

Indiana Trial Rule 60.5 establishes procedures to resolve intra-county disputes about the funding for court operations. These procedures are infrequently invoked in Indiana. In this case, however, the extraordinary procedures of Trial Rule 60.5 have been employed to settle a rather ordinary dispute over which judge uses a particular office in the St. Joseph County Courthouse.[1]

In short, the Board of Commissioners of St. Joseph County ("Commissioners") want to relocate the magistrate of the Circuit Court to a particular room of the County Courthouse; the presiding judge and the six other Superior Court judges working in the County Courthouse want to continue to locate a Superior Court judge in that room.

The Superior Court issued an order of mandate with regard to the use of the office, signed by all seven judges. This order triggered the procedures found in Trial Rule 60.5. We appointed the Honorable Allen N. Wheat, Judge of the Steuben Circuit Court, as special judge to hear evidence and to make findings with regard to the mandate order. A trial was held. Ultimately, the special judge entered a decree containing findings of fact and conclusions of law. The decree sustained the order of mandate.

Trial Rule 60.5 provides that the special judge's decree will be reviewed by this Court unless the responsible governmental subdivision (in this case, the Commissioners) expressly waives such review. The Commissioners declined to waive review. The Court issued an order governing the filing of the record of proceedings and briefs by the parties. Once fully briefed, the Court took the matter under advisement.

---

1. The typical mandate proceeding involves a dispute about court funding and Trial Rule 60.5 consistently speaks in those terms. However, we have held that the procedures of Trial Rule 60.5 apply to mandates other than just those involving court funding. *Board of Comm'rs of Crawford County v. Riddle,* 493 N.E.2d 461, 462 (Ind. 1986).

## II. Factual background

The principal court system in St. Joseph County is composed of a Circuit Court, a Superior Court composed of eight judges, and a Probate Court. Ind.Code §§ 33–4–1–75, 33–5–40–1, 33–8–2–1. In addition, the Circuit Court has one full-time magistrate. Ind.Code § 33–4–1–75.1. The Circuit Court judge, the Circuit Court magistrate, and seven of the judges of the Superior Court all have their offices in the County Courthouse. These are the individuals, along with the Commissioners, who are directly or indirectly involved in this mandate proceeding.

One of the judges of the Superior Court who occupied an office in the County Courthouse announced her retirement. Following that announcement, the seven Superior Court judges who work in the County Courthouse (hereinafter, simply "Superior Court judges") met and reached an agreement, based on previously established protocol, on how the offices and courtrooms of the Superior Courts would be reassigned as a result of the impending vacancy. Their plan did not affect the operations of the Circuit Court or the Circuit Court magistrate, or any other entity working in the County Courthouse.

Without knowledge of the plan already being developed, the Circuit Court judge sent a letter to the Commissioners requesting a different configuration of the office space from that planned by the Superior Court judges. The Circuit Court judge's configuration involved the relocation of the Circuit Court magistrate into space currently used by the Superior Court.

Sometime later, at a meeting of the Commissioners, the presiding Superior Court judge advised the Commissioners of the office assignment plan that had been agreed upon by the Superior Court judges. The presiding judge was informed of the contradictory request from the Circuit Court judge at that time.

After discussing the matter with the other Superior Court judges, the presiding judge sent a letter to the Commissioners informing them of the Superior Court judges' decision with regard to the office space. On the same day the presiding judge sent his letter, the Commissioners sent letters to the Circuit Court judge and to the presiding judge of the Superior Court stating that the Commission had approved a plan consistent with the request of the Circuit Court judge.

Thereafter followed further exchanges of correspondence. The Commissioners submitted a written counter-proposal with regard to the space use. The Superior Court judges met and considered the counter-proposal. They rejected it in writing. The Commissioners responded with a letter indicating that the Commissioners had made a decision. The mandate order soon followed, assigning offices and courtrooms in accordance with the plan agreed to by the Superior Court judges.

## III. The Commissioners' contentions

The Commissioners advance the following arguments as to why the order of mandate should not be upheld.

### A. Authority concerning courthouse room assignments and the standard of review.

The principal argument advanced by the Commissioners is based on two contentions: (1) they are vested with the authority to allocate courthouse space and; (2) their decision is reviewable under an arbitrary and capricious standard.

The basis for the first contention is the following statute:

The St. Joseph Superior Court shall hold its sessions in the St. Joseph County courthouse in the city of South Bend and in at least one appropriate place in the city of Mishawaka. The superior court in the city of Mishawaka shall be full-time and shall exercise full superior court jurisdiction in that city. The board of county commissioners of St. Joseph County shall provide and maintain in the courthouse in South Bend and in an appropriate place in Mishawaka court facilities, such facilities to include suitable and convenient courtrooms, jury rooms and offices for the judges, secretaries and official court reporters, and other necessary facilities, including all the necessary furniture and equipment for the rooms and offices of the court for the

conduct of all criminal and civil business, including the necessary facilities for jury trials.

Ind.Code § 33–5–40–8(a). The Commissioners argue this statute grants them the authority to determine which judge sits in what office in the Courthouse.

■ The Court agrees with the Commissioners that their statutory responsibility to "provide and maintain ... suitable and convenient courtrooms, jury rooms and offices for the judges" carries with it a reasonable degree of discretion about the location of court offices. *See generally, State ex rel. Glenn v. Smith,* 227 Ind. 599, 607, 87 N.E.2d 813, 817 (1949). On the other hand, "[a] court of general jurisdiction cannot be controlled, directed, or impeded in its functions by any other department of government." *Board of Comm'rs of Crawford County v. Riddle,* 493 N.E.2d 461, 463 (Ind.1986). Thus, both the Commissioners and the Superior Court judges exercise authority with regard to the use of court-related office space within the County Courthouse.

The principal issue in this case, then, is how to resolve this dispute with regard to the exercise of that joint authority. This leads us to the crux of the Commissioners' second contention.

The Commissioners urge that their decision concerning office assignments is entitled to enforcement unless it is arbitrary and capricious. In support of this contention, they cite to *Board of Comm'rs of Vigo County v. Stout,* 136 Ind. 53, 35 N.E. 683 (1893). In a general discussion of the powers and trusts embraced by the Vigo County Board of Commissioners, the Court in *Stout* did state, "The Commissioners may not exercise their powers arbitrarily and without regard to the trusts committed to their keeping." 136 Ind. at 58, 35 N.E. at 685. As the Commissioners also note, this Court later stated, "We further held [in *Stout* ] that control of county property is generally confided to the Board of Commissioners; however, in controlling such, the Commissioners have a duty not to act arbitrarily." *Riddle,* 493 N.E.2d at 462, *citing Stout,* 136 Ind. at 57–58, 35 N.E. at 685.

The *Stout* case, however, was not a mandate proceeding. Moreover, the dispositive issue in that case was whether the county commissioners could collaterally attack in the Vigo Superior Court an order of the Vigo Circuit Court relating to the operation of a courthouse elevator. 136 Ind. at 62–63, 35 N.E. at 686.

The *Riddle* case was a mandate proceeding involving a dispute over office space use, and the Court did refer to language in the *Stout* opinion regarding a duty on the part of the county commissioners not to act arbitrarily. However, the Court in *Riddle expressly stated* that the standard it was applying to resolve the dispute was whether the order of mandate was reasonably necessary for the operation of the courts and court-related functions and whether any other governmental interests were so adversely affected as to require that the order be set aside. *Riddle,* 493 N.E.2d at 463.

■ Thus, notwithstanding any *dicta* in *Stout* or *Riddle,* a mandate proceeding is not a review of whether the position taken by the governmental entity with regard to court operations is arbitrary or capricious. Rather, in a mandate proceeding, the special judge is reviewing the order of mandate against the legal standards that must be met before such an order may be given force.

■ As we held in *Riddle* and have held elsewhere, the central issues in a mandate proceeding are whether the order of mandate is reasonably necessary for the operation of the courts and court-related functions and whether any other governmental interests are so adversely affected as to require that the order be set aside. *Morgan Circuit Court v. Morgan County Council,* 550 N.E.2d 1303, 1304 (Ind.1990). When we review the mandate decree of the special judge, we do not ordinarily reevaluate the evidence and we will affirm the decree if there is substantial evidence of probative value to support the judgment. *In re Mandate of Funds for the Brown Circuit Court,* 507 N.E.2d 583, 584 (Ind.1987).

■ The special judge entered factual findings from which he concluded that the mandate order was reasonably necessary for

the operation of the courts because of security and efficiency concerns, and that no governmental interests were adversely affected. The Commissioners do not specifically challenge any of the findings of the special judge, and we therefore have no need to detail them here. Suffice it to say they reflect that there was substantial evidence of probative value to support the judgment.

The Commissioners point to evidence demonstrating that their position with regard to court office assignments is reasonable and sound. Even assuming that to be true, it is not dispositive of the questions with which we are presented. As we stated above, the special judge in a mandate proceeding is not making a determination of whether the county legislative body has acted arbitrarily. The special judge is to determine whether the order of mandate has met the legal standards that must be reached before such an order will be given force. In this instance, as stated above, we agree with the special judge that the order meets those standards. It is therefore entitled to enforcement.

B. *The "meeting" language of Trial Rule 60.5.*

■ The Commissioners present a secondary argument as well. Trial Rule 60.5 states, in part, "Prior to issuing the order [of mandate] the court shall meet with the mandated party to demonstrate the need for said funds." The Commissioners assert there was no "meeting" between them and the Superior Court once the dispute arose and thus the mandate order should be vacated.

In considering this contention, the special judge noted the exchange of letters on the topic of courtroom assignments and concluded:

> The written correspondence made imminently clear the position of the Commissioners and the Judges of the Superior Court regarding the use which the Commissioners and Superior Court desired to make of the disputed space, and why. The letter and spirit of T.R. 60.5(A) have been satisfied in this case.

The Court agrees with the special judge in this instance.

■ ·Without question, state judicial policy strongly favors settlement of disputes over litigation. *State ex rel. Indiana State Bar Ass'n v. State Bd. of Tax Comm'rs,* 714 N.E.2d 128 (Ind. 1999); *Silkey v. Investors Diversified Services, Inc.,* 690 N.E.2d 329, 332 (Ind.Ct.App.1997), *reh'g denied.* The language of Trial Rule 60.5 advances that policy by requiring the parties to "meet" prior to the issuance of a mandate order. In addition, as the special judge noted, the requirement of a meeting helps to ensure that the parties understand each others' positions and interests. In this instance, the parties explained their positions and interests in an effort to resolve the dispute through the exchange of correspondence. At one point a counter-offer was even made by the Commissioners but was rejected in writing by the Superior Court judges. While there may not have been a face-to-face meeting once the full nature of the dispute became known, the parties made attempts to settle the matter prior to the issuance of the mandate order and there is no question that both sides understood the position taken by the other.

■ Intra-county disputes between the judiciary and the county legislative authority should be and almost always are resolved without resort to mandate procedures. Having face-to-face meetings will often facilitate the settlement process when disputes do arise. In this case, however, the purposes of Trial Rule 60.5 have narrowly been met by virtue of the exchange of letters that preceded the mandate order. The lack of an actual face-to-face meeting prior to the issuance of the mandate order does not justify reversal in this case.

### IV. Conclusion

We have reviewed the decree of the special judge and the orders of mandate and find that they should be affirmed. We also affirm the special judge's unchallenged findings with regard to the propriety of the attorney fees in this case.

All Justices concur except DICKSON, J., who dissents without opinion on the issue of whether the St. Joseph Superior Court has

met with the mandated entity, as required by Trial Rule 60.5(A).