ATTORNEYS FOR APPELLANTS
CENTER TOWNSHIP TRUSTEE,
EUGENE W. AKERS, AND THE
CENTER TOWNSHIP ADVISORY BOARD
Gregory F. Hahn
Alan S. Townsend
Bryan H. Babb `
Jonathan W. Hughes
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
JUDGE MICHELLE SMITH SCOTT
Karl L. Mulvaney
Philip L. Isenbarger
Margaret M. Christensen
Bingham Greenebaum Doll LLP
Indianapolis, Indiana



_____

# In the
# Indiana Supreme Court

_____

No. 49S00-1207-MF-420

IN RE MANDATE OF FUNDS FOR
CENTER TOWNSHIP OF MARION               MARION CO. SMALL CLAIMS COURT
COUNTY SMALL CLAIMS COURT               CAUSE NO. 49D01-1111-SC-10887
ORDER FOR MANDATE AND
MANDATE OF FUNDS

_____

On Automatic Review Pursuant to Trial Rule 60.5(B) and Appellate Rule 61

_____

The Honorable Charles E. Berger, Special Judge

_____

**June 28, 2013**

**Rucker, Justice.**

This is a mandate action involving a dispute between the Center Township of Marion County Small Claims Court and the Center Township Trustee and Advisory Board over court renovations, additional staff, increase in salaries, and the location of the court. As explained below we approve the renovations, additional staff, and the mandate prohibiting the relocation of the court. We disapprove the mandated salary increases.

## Background

From time to time—as has happened in the case before us—disagreement over court resources between a judge and local government will prove to be so intractable as to require litigation. In 1976, this Court adopted Trial Rule 60.5 establishing orderly procedures for the resolution of intracounty disagreements about court resources. "We adopted the rule after studying the report of a legislative joint committee that held hearings attended by judges and by many representatives of county government." St. Joseph Cnty. Comm'rs v. Nemeth (In re Mandate of Funds), 929 N.E.2d 703, 707 (Ind. 2010) (internal citation omitted).

In 2008, an informal working group of county government representatives and trial court judges proposed several changes to Trial Rule 60.5. For example, "they suggested that the rule explicitly provide for referring such disagreements to mediation;" that "when it became necessary to appoint a special judge to adjudicate such disagreements, that [the] special judge not be a sitting or [former] judge but instead a practicing lawyer;" and proposed that "the rule specify that any attorney fees awarded by a special judge in such cases be paid at a rate not greater than the reasonable and customary hourly rate for an attorney in the county." Id. at 708. This Court adopted the proposals of the working group in 2009. This is the second case using the 2009 amended procedures of Trial Rule 60.5. See id.

The procedures established by Trial Rule 60.5 "are infrequently invoked in Indiana." Montgomery Cnty. Council v. Milligan (In re Mandate of Funds), 873 N.E.2d 1043, 1045 (Ind. 2007). And although the typical mandate proceeding involves a disagreement about court funding, we have held that the procedures of Trial Rule 60.5 apply to mandates other than those involving court funding, including disputes over the location of court offices. See In re

2

<u>Assignment of Courtrooms, Judge's Offices, and Other Court Facilities of St. Joseph Super. Ct.</u>, 715 N.E.2d 372, 373 n.1 (Ind. 1999). In this case the procedures of Trial Rule 60.5 have been employed to settle a dispute not only about the funding for court operations, but also the relocation of the court itself.

In most Indiana counties, small claims cases[1] are heard as part of the "small claims docket" of the County Circuit or Superior Courts. <u>See</u> Ind. Code § 33-29-2-4. Marion County operates differently. In Marion County there are nine township government entities.[2] And by statute a small claims court has been established in each township. <u>See</u> Ind. Code § 33-34-1-2. Together the nine township courts handle approximately 70,000 cases annually. <u>See</u> Indiana Supreme Court Small Claims Task Force, <u>Report on the Marion County Small Claims Courts</u> 7 (2012).[3]

In essence, the Marion County small claims courts are township-level judicial entities; and for some time there has been tension between these courts and the township governing bodies with regard to control of court activities. The busiest of the township courts is that in Center Township, which receives approximately 14,000 case filings annually. <u>See</u> Task Force

---

[1] Small claims are defined as "[c]ivil actions in which the amount sought or value of the property sought to be recovered is not more than six thousand dollars ($6,000)." Ind. Code § 33-28-3-4.

[2] The entities include: Center Township; Decatur Township; Franklin Township; Lawrence Township; Perry Township; Pike Township; Warren Township; Washington Township; and Wayne Township.

[3] In January 2012 this Court created the Marion County Small Claims Task Force to "investigate whether litigants in those courts are denied access to justice that is provided to small claims litigants in Indiana's other 91 counties and whether the township trustees exert control over the courts' financial and personnel matters in a manner that threatens judicial independence." <u>Id.</u> at 1. After conducting three public hearings over a period of three weeks and gathering information and input from a variety of sources, including judges, attorneys, small claims plaintiffs and defendants, community leaders, local bar associations, and concerned citizens throughout Marion county, the task force – composed of Judge John G. Baker of the Indiana Court of Appeals and Senior Judge Betty Barteau of the Indiana Court of Appeals – submitted a detailed report that included findings of fact describing serious problems and procedures in the Marion County Small Claims Courts along with recommendations to remedy those problems. <u>Id.</u> at 1-2. We express our appreciation to the task force for its excellent work. Also, we cite that document throughout this opinion as "<u>Task Force Report</u>"; it is available online at www.in.gov/judiciary/3844.htm. Although the report was not made a part of the record by the parties, the special judge appointed to hear this case took judicial notice of the report, and in the absence of objection from either party we have done likewise.

3

Report, Appendix at 370. Center Township encompasses central Marion County, including downtown Indianapolis and the nearest suburbs.

## Procedural History

In 2006, the then-Center Township Small Claims Court judge, the Honorable Paula Lopossa, filed a complaint for mandate enjoining the then-trustee, Carl Drummer, from "hiring, supervising, and disciplining" the court's clerks and declaring that the court has the sole authority to hire, supervise, and discipline its employees, prepare and submit its annual budget, and to order its own equipment and supplies. Joint Exhibits at 201-202. The complaint also alleged that the 1,615 square feet of workspace then allocated for court operations in the City-County Building in downtown Indianapolis was insufficient, though Judge Lopossa requested no relief in this regard. See id. at 200.

After her election to the Center Township Small Claims Court bench in 2007, Judge Michelle Smith Scott was substituted as the plaintiff in the court's complaint against Trustee Drummer. Judge Scott and Trustee Drummer subsequently negotiated a compromise and the complaint originated by Judge Lopossa was dismissed in 2009. However, this did not end the tension about administrative authority over the court. The record shows that after taking office in January 2011, the then newly-elected Center Township Trustee, Eugene Akers, continued the practice of exercising control over the court's budgets, funds, and employees. See, e.g., Tr. at 110-14, 162-63 (Trustee Akers' testimony that the Small Claims Court clerks and other staff members reported to the Trustee, not to Judge Scott); Tr. at 160 (Trustee Akers' testimony that he required court employees to recite the Township Mission Statement upon his request); see also Appellant's Verified Statement at 3 (acknowledging that the Trustee and/or Center Township "unintentional[ly]" failed to notify Judge Scott before extending offers to new court employees and failed to notify the Judge of their hire until the business day before they reported to work in Judge Scott's court).

Sometime in early spring of 2011, Trustee Akers advanced a plan to relocate the Center Township Small Claims Court from its small space in the basement of the City-County Building

to a larger, more modern facility in the township-owned Carson Center on Fall Creek Parkway in Indianapolis and to renovate the Carson Center space to accommodate the court. The Trustee first advised Judge Scott of his plan on June 7, 2011. At a public hearing the next day the Trustee presented the plan to the Center Township Advisory Board. Judge Scott attended the June 8 meeting and asked the Trustee and the Board to take various concerns of hers into consideration before deciding to move the court. See Joint Exhibits at 33-34. On June 13 Judge Scott sent a letter to the Board president offering, in conjunction with the Office of State Court Administration, technical assistance for a feasibility study on moving the court, for the purpose of obtaining "an objective opinion by an individual experienced in Court Operations." Id. at 39. Judge Scott opined that the cost of such a study "may be underwritten and likely free." Id. Another Board meeting was held on July 18, at which Trustee Akers stated "A Feasibility Study . . . will cost more than I am going to spend." Id. at 42. Instead the Trustee conducted what he characterized as a "commonsense study" to conclude that the court should be relocated. Id. at 40. Also at the July 18 meeting, Judge Scott presented a report providing support for her conclusion that the court should remain in its present location in the City-County Building. Id. at 42; 47-57. On August 31, Judge Scott wrote to Trustee Akers in preparation for the upcoming budget meeting, requesting funds for salary increases, additional staff, and replacement of office furniture in the City-County Building to facilitate better operation of the court. Id. at 68-69. Ultimately, on September 21, 2011 the Board voted to approve the Trustee's plan and issued an order relocating the court to the Carson Center over the objection of Judge Scott.

Having been unsuccessful in resolving the relocation issue through other avenues and pursuant to her authority under Indiana Trial Rule 60.5, Judge Scott, on behalf of the Small Claims Court (collectively, the "Court") issued an "Order For Mandate And Mandate Of Funds" directing the Trustee and the Advisory Board (collectively, the "Township") to show cause why:

> [T]he Center Township of Marion County Small Claims Court should not at this time remain located in the City County Building . . . the Center Township of Marion County Small Claims Court clerks should not receive a 5% increase in salary . . . the Court should not be provided two additional full-time clerks; and . . . why funds should not be appropriated to allow for new space-efficient furniture, and the reconfiguration of the Court's existing

space and for the configuration of new space offered to the Court by the City-County Building Authority.

Joint Exhibits at 1. The Order specifically mandated:

> [T]hat the Center Township Small Claims Court shall not be moved, and that the Trustee and Township Board provide (1) funds for a 5% increase in salary for all court employees; (2) funds necessary to fund two new clerk positions; and (3) funds to purchase new furniture and to allow for reconfiguration of current and new space in the City-County Building.

Id. at 1-2.

The Township opposed the Mandate Order and filed with this Court a motion to dismiss. Noting that "an overriding issue presented in this matter is the fundamental question of access to justice," this Court on December 9, 2011 denied the Township's motion[4] and pursuant to Trial Rule 60.5(B) appointed Mr. Charles L. Berger, an experienced Vanderburgh County attorney, as special judge to hear the matter and make findings regarding the mandate.[5] In re Center Twp. of Marion Cnty. Small Claims Ct. Order for Mandate, No. 49S00-1111-SJ-667 at 1-2 (Ind. Dec. 9, 2011). The special judge held a trial on May 1, 2, and 3, 2012; and thereafter on June 11, 2012 entered his findings of fact, conclusions of law, and decree. The decree affirmed the Mandate Order in certain respects including decreeing: (1) the location of the Small Claims Court should remain in the City-County Building; (2) Center Township must provide reconfigured space and certain items of new furniture and equipment for the Small Claims Court; and (3) Center Township must allocate funds to provide two additional full-time staff members for the Small Claims Court. Although not a part of the Mandate Order itself, but consistent with the evidence

---

[4] Three days after the Court denied the Township's motion to dismiss, the Township contracted with a construction firm to proceed with the renovation of the Carson Center space for the Small Claims Court at a cost of $459,000.00.

[5] When a mandate order is issued, the matter "shall be set for trial on the merits of such order to show cause" unless the mandated party or parties waive the right to trial and agree to make such appropriation or payment. T.R. 60.5(B). The purpose of this trial is to "provide a factual foundation, developed in a suitable adversary atmosphere, to permit a rational decision of the issues." State ex rel. Lake Cnty. Council v. Lake Cnty. Ct., 359 N.E.2d 918, 920 (Ind. 1977). T.R. 60.5(B) further provides that to hear the mandate action the Supreme Court "shall . . . appoint as special judge an attorney who is not a current or former regular judge and who does not reside nor regularly practice law in the county issuing the Order of Mandate of Funds or in any county contiguous thereto."

and with Judge Scott's specific request at trial, the decree further directed "the Court shall maintain authority and control of its staff" in matters of supervising, hiring, and firing "without supervision or involvement of the Trustee," and further ordered the Trustee "to relinquish control" over the Small Claims Court's financial operations. App. at 48.[6] The decree also ordered the Township to pay the reasonable attorney's fees and expenses incurred by each party. See id. at 47-48. Further, the special judge reversed that portion of the mandate ordering an increase to court employees' salaries. We express our appreciation to special judge Berger for his service in this challenging case.

---

[6] In pertinent part the Decree specifically provided:

> The Current Small Claims Court facility is in need of improvements. It is ordered that the location of the Court shall remain at the current location in the City-County Building. It is further ordered that Center Township shall provide reconfigured court space and updated furniture and equipment to the Court to ensure the Court facility is adequate in accordance with Indiana Code § 33-34-6-1.
>
> Center Township is hereby ordered to allocate funds to provide two additional full time staff to the Center Township Small Claims Court. In order to give practical, permanent, and lasting effect to the Mandate Order, the Trustee is ordered to relinquish control over the Small Claims Court's operations to the Court. Specifically, the Court shall maintain authority and financial control by:
>
> > 1) Preparing an annual Court budget for submission to the Center Township Board and Trustee;
> > 2) Managing the Court's bank account and issuing checks without supervision of involvement of the Trustee; and
> > 3) Managing financial records and submitting mandatory financial reports to state entities.
>
> Specifically, the Court shall maintain authority and control of its staff by:
>
> > 1) Supervising the staff on a day-to-day basis and making decisions as to specific personnel policies applicable to Court staff without supervision or involvement of the Trustee; and
> > 2) Making decisions as to hiring and termination of staff members, in accordance with the Court's personnel policies without supervision or involvement of the Trustee.

App. at 47-48. With respect to the authority of the Court maintaining control over its finances, we would add that of course any such authority must be exercised consistent with the requirements of the State Board of Accounts.

Trial Rule 60.5 provides that the special judge's decree be reviewed by this Court unless the responsible governmental entities expressly waive review. Review was not waived here, so this Court issued an order governing briefing and the filing of the record on appeal. The parties concluded briefing on October 19, 2012, and we took the matter under advisement. The Township appeals aspects of the decree; however the Small Claims Court does not cross-appeal the issue of salary increases.

## Discussion

It bears repeating that disputes between the judiciary and governmental legislative and executive authorities, if they cannot otherwise be resolved, are governed by Indiana Trial Rule 60.5, which provides in relevant part:

> Whenever a court, except the Supreme Court or the Court of Appeals, desires to order either a municipality, a political subdivision of the state, or an officer of either to appropriate or to pay unappropriated funds for the operation of the court or court-related functions, such court shall issue and cause to be served upon such municipality, political subdivision or officer an order to show cause why such appropriation or payment should not be made.

T.R. 60.5(B). Where there is a clear and present danger of impairment of a court's operation, a mandate action is proper. St. Joseph Cnty. Comm'rs v. Nemeth, 929 N.E.2d at 710 (citing Montgomery Cnty. Council, 873 N.E.2d at 1046). The special judge's role in a mandate proceeding is to determine whether the mandated funds or actions are reasonably necessary for the operation of the courts and court-related functions, and whether any other governmental interests are so severely and adversely affected by the order as to require it to be set aside. See id.; In re Assignment of Courtrooms, 715 N.E.2d at 375; Morgan Cir. Ct. v. Morgan Cnty. Council, 550 N.E.2d 1303, 1304 (Ind. 1990). When we review the special judge's decree, "we do not ordinarily reevaluate the evidence and we will affirm the decree if there is substantial evidence of probative value to support the judgment." In re Assignment of Courtrooms, 715 N.E.2d at 375 (citing In re Mandate of Funds for the Brown Cir. Ct., 507 N.E.2d 583, 584 (Ind. 1987)). But given the "profound public interest in open and functioning courts and our special

8

knowledge of trial court operations," we retain "a measure of authority to weigh and evaluate the evidence in reviewing the judgment of the special judge." Morgan Cir. Ct., 550 N.E.2d at 1304.

In this case the Township expressly does not contest that portion of the special judge's decree directing that the Court – without the intervention of the Trustee – shall control the supervising, hiring, and firing of court staff; or ordering the Trustee to relinquish control over the Small Claims Court's financial operations. See Br. of Appellants at 40. This is of course as it should be. See Bd. of Comm'rs of Crawford Cnty. v. Riddle, 493 N.E.2d 461, 463 (Ind. 1986) (declaring a court "cannot be controlled, directed, or impeded in its functions by any other department of government"). Also, the Township does not object to allocating funds for two additional full-time staff members for the court. Instead, the Township complains only about that portion of the decree concerning the court's location and the award of attorney fees.

## I. Location of the Court

The Township urges that the decree ordering the Small Claims Court to remain in the City-County Building and directing the Township to provide reconfigured space and new furniture and equipment should be reversed. In support of its position the Township calls our attention to numerous facts and arguments favoring relocation. From these, we distill two relevant contentions: (1) the Mandate Order adversely affects governmental interests, namely: the interest of the Board in sharing joint authority with the local judge over the Court's location, and (2) the Mandate Order is unsupportable because relocating the court to the Carson Center presents no clear and present danger of impairment to its operations.

With respect to the first contention the Township's argument can best be summarized as follows: the exercise of joint authority over the decision concerning the Court's location was rendered a nullity when Judge Scott mandated that the court remain in its present location. According to the Township there is no "'joint' exercise of any authority" where a court can resort to mandate "any time the Legislative and Executive branches refuse to adopt the Judiciary's position on a dispute over court facilities . . . ." Br. of Appellants at 43.

9

We first observe that it is certainly correct to say that the Township's statutory responsibility to "provide a courtroom and an office for each judge in a convenient location within the township," I.C. § 33-34-6-1,[7] "carries with it a reasonable degree of discretion about the location of court offices." In re Assignment of Courtrooms, 715 N.E.2d at 375. However, as the special judge correctly observed although "the Trustee . . . bear[s] the *duty* to provide for the small claims court, [the relevant statutes] do not grant the Trustee the unilateral power or *authority* to relocate the Court without consulting the presiding judge or involving the Board in the decision to relocate the Court." App. at 39 (emphasis in original). As for resort to the extraordinary remedy of mandate, it is true that "there is no Indiana code provision granting the presiding judge the authority to veto or override any final decision to move a court." Id. Nonetheless, "[i]f the separation of powers is to be maintained, it is essential that the judicial branch [of] government not be throttled by either the legislative or administrative branches, and that the courts be empowered to mandate what is reasonably necessary to discharge their duties." McAfee v. State ex rel. Stodola, 284 N.E.2d 778, 782 (Ind. 1972).

In essence, although the Township and the Small Claims Court judge exercise joint authority with respect to the location of the court facility, the question presented is how to resolve a dispute over the exercise of that joint authority. The special judge reached a common sense resolution: "unless and until Center Township engages in a collaborative decision-making process involving all three co-equal branches of government, Center Township should not be permitted to relocate the Court to the Carson Center." App. at 46. The Township counters that its decision to move the court's location was taken only after a public meeting in compliance with Indiana statutory authority, thus giving "a voice to all three co-equal branches of government." Br. of Appellants at 38 (internal quotation marks omitted).[8] Indeed, the record

---

[7] More specifically the statute provides:

> The township trustee shall provide a courtroom and an office for each judge in a convenient location within the township that has: (1) adequate access; (2) sufficient parking facilities; (3) a separate and appropriate courtroom; (4) proper space and facilities for the bailiff, clerks, and other employees; and (5) enough room for files and supplies.

I.C. § 33-34-6-1. Further, the Township is required to furnish equipment, supplies, and staff to the small claims court. See I.C. §§ 33-34-6-2 and -3.

[8] Indiana Code section 33-34-1-7 provides:

10

reflects the Board conducted a public hearing concerning the location of the court and entered an order for the court's relocation. But, as the special judge found and as the evidence of record supports:

> The Trustee's process that ultimately lead to a Board order to relocate the Small Claims Court failed to adequately involve the Court and failed to adequately study and analyze the impact of the move. Indeed, Trustee Akers determined that he would move the Court out of the City-County Building before consulting with the Court or the Board. While the Trustee and Board permitted Judge Scott to present facts and concerns during various Board meetings, these concerns were dismissed without investigation by the Trustee or Board. Moreover, neither the Trustee nor the Board engaged in a meaningful dialogue or exchange of ideas with the presiding judge regarding the relocation of the Court. Ultimately the suggestions and efforts of the presiding judge were ignored.

> The Court made efforts to follow appropriate steps to analyze the appropriateness of the relocation of the Court and the concern for public access to justice.

---

> A hearing must be conducted to obtain evidence, opinions, advice, and suggestions from public officials and the general public concerning:
>
> (1) whether a small claims court should be established or abolished in the township, if the township has a population of less than fifteen thousand (15,000) persons;
> (2) whether the small claims court should be full time or part time;
> (3) the location of the small claims court courtroom and offices; and
> (4) other relevant matters.

Section 33-34-1-9 further requires:
> Not more than two (2) weeks after a hearing is conducted under section 7 of this chapter, the township board shall, after considering the evidence, opinions, advice, and suggestions presented at the hearing, enter an order concerning:
> (1) whether a small claims court shall be established or abolished in the township if the township has a population of less than fifteen thousand (15,000) persons;
> (2) whether the small claims court if any, shall function full time or part time;
> (3) the location of the small claims court courtroom and offices under IC 33-34-6-1; and
> (4) other relevant matters.

11

App. at 40. In the end, absent the Township (i) "adequately involv[ing] the court," (ii) "engag[ing] in meaningful dialogue or exchange of ideas with the presiding judge" and instead (iii) "ignor[ing]" the court's "suggestions and efforts" the Judge of the Center Township Small Claims Court was left only with the option of mandate where she was of the view that there was a clear and present danger of impairment of the court's operation.[9] This leads to our next discussion.

The Township contends the Mandate Order should be set aside because relocating the court presents no clear and present danger of impairment of court operations. The Township rests this conclusion on the present condition of the court facilities in the City-County Building, its supposition that such conditions will not be ameliorated by expanded and reconfigured space and furniture, the availability of the newly-renovated Carson Center space, and the fact that most court employees support the move. See Br. of Appellants at 45-46, 49-51. On review of this mandate order, our job is not to assess whether the Carson Center would be a "better" location for the court. Rather, we must determine whether the record contains substantial evidence of probative value that there is a clear and present danger of impairment to the court or court functions if the court is not maintained and reconfigured in its present location. We find that it does.

As we previously observed, an overriding issue presented in this case is the fundamental question of access to justice. Indeed, providing such access is a constitutionally-mandated function of Indiana courts. See Ind. Const. art. 1, § 12 ("All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."). It is undisputed that the Small Claims Court is presently centrally located in Center Township and is in close proximity to all (and within easy walking distance to most) public bus routes in the township and Marion County. Further, there is no dispute that the court is located in the same building as multiple other Marion County Courts

---

[9] Contrary to the Township's apparent position we would encourage cooperation and dialogue between judges of the Small Claims Courts and their Township governing bodies. Indeed this very process resulted in a compromise between Judge Scott and former Trustee Drummer thereby circumventing a prior action for mandate.

and public services frequently used by litigants. We also find it relevant that the court in this case, as with most small claims courts, hears a substantial volume of consumer collection cases and landlord-tenant disputes such as evictions. See Tr. at 185, 310. According to a comprehensive study of legal needs of the poor in Indiana, it is precisely these types of cases that most frequently plague low-income Hoosiers. See Indiana State Bar Association, et al., Unequal Access to Justice: A Comprehensive Study of the Civil Legal Needs of the Poor in Indiana 80-83 (2008), available at www.indianalegalservices.org/files/ilsi-unequal-access-2008-full.pdf. And it is also worth noting that the Center Township Small Claims Court is not only in the same building, but also is on the same *floor* as courts handling paternity and child support, domestic violence, and protective orders – services also of particular relevance to this demographic. See id. at 81-85.

In sum, we conclude the record is replete with probative evidence that moving the Center Township Small Claims Court away from its present location poses a clear and present danger to access to justice for the litigants it serves, and that maintaining and upgrading the Court in its present location is reasonably necessary to preserve that access. And although the Township does not object to other components of the special judge's decree, see Br. of Appellants at 40, we think it bears emphasizing that we specifically affirm the special judge's order that the Township shall allocate funds to hire two additional Court employees, that the Trustee shall relinquish control over Court functions, and that authority over its employees and its financial operations shall be vested solely in the Court. See supra n. 6; see also Task Force Report at 19, 24, 25 (concluding that township courts must have sole authority over their employees and their financial operations).

## II. Attorney Fees

Finally, we address attorney fees. Because the proper delivery of judicial services is often at stake in Trial Rule 60.5 proceedings, we have acknowledged the propriety of reasonable compensation for attorneys who represent courts in such matters. See St. Joseph Cnty. Cmm'rs, 929 N.E.2d at 720 (citing Montgomery Cnty. Council, 873 N.E.2d at 1049; Kramer v. Hancock Cnty. Ct., 448 N.E.2d 1190, 1192 (Ind. 1983)). The factors to be considered in determining the

reasonableness of a fee include the following: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." Id. (quoting Ind. Professional Conduct Rule 1.5(a)). In this case the special judge's decree provided in relevant part: "The Center Township, by and through its Trustee, is responsible for the reasonable attorney fees and expenses incurred by each side in this case. The parties are directed to present their fee petitions within twenty (20) days of the issuance of this Order." App. at 48. Thereafter the attorneys representing the Court presented their petition for fees and expenses to the special judge. In response, the attorneys representing the Township objected to the petition as premature and requested a stay pending this Court's review of the mandate order. App. at 283-85. The special judge granted the stay. App. at 287-88.

On review the Township makes no claim concerning the reasonableness of the fees and expenses requested, reserving any such issue for an evidentiary hearing before the special judge. Instead, in a one-paragraph argument, the Township contends "This Court should deny Judge Scott's fee request." Br. of Appellants at 51. The Township's contention is premised on the fact that over and above her statutory salary, Judge Scott also received additional revenue for performing wedding ceremonies in her capacity as a judge. According to the Township Judge Scott's motivation in issuing the order of Mandate was to prevent the Court from relocating in an effort "to preserve and protect her own personal stream of income." Id. We make the following observations. First, although the special judge determined that "[o]ne consideration" for Judge Scott not wanting the Court to relocate to the Carson Center was the potential loss of wedding income, the special judge specifically found, "[t]he concern that Judge Scott's Mandate Action was *motivated* by a perceived loss of wedding income results from speculation and is unsupported by credible evidence." App. at 26 (emphasis added). Second, and more importantly the question here is not Judge Scott's motivation, but rather whether mandate was necessitated

14

by a clear and present danger of impairment of the court's operation. <u>See</u> <u>St. Joseph Cnty.</u> <u>Cmm'rs</u> 929 N.E.2d at 710. As recounted above, there was sufficient evidence presented to the special judge that the mandated action was reasonably necessary for the operation of the court and court-related functions, and that any other governmental interests were not so severely and adversely affected by the order as to require Order of Mandate be set aside. <u>See</u> <u>In re</u> <u>Assignment of Courtrooms</u>, 715 N.E.2d at 375; <u>Morgan Cir. Ct.</u>, 550 N.E.2d at 1304. We therefore affirm the special judge's decree concerning attorney fees and expenses.[10]

### Conclusion

We affirm the decree of the special judge.

Dickson, C.J., and David, Massa and Rush, JJ., concur.

---

[10] We also observe that effective March 1, 2013 Rules governing the Marion County Small Claims Courts were adopted prohibiting judges from retaining fees for weddings as their own personal income. <u>See</u> Addendum to Appellant's Reply at 12 (reproducing Marion County Small Claims Court Rule LR49-SC00-703). Comments to the rules declare in pertinent part: "the Rule follows the Task Force recommendation and requires that wedding fees for weddings performed in the Court or on Court time be deposited in the Township General Fund." <u>Id.</u> at 13.