## MENDENHALL ET AL. v. THE FIRST NEW CHURCH SOCIETY OF INDIANAPOLIS.

[No. 22,106. Filed April 5, 1912.]

1. CONTRACTS.—*Construction.*—The character of a written instrument is to be determined from the real nature of the transaction, and not from the form nor the name which the parties apply to the instrument. p. 342.

2. LANDLORD AND TENANT.—*Leases.—Effect of Lease.*—The effect of a lease is to give the lessee the right to the possession of the property for a term of years, or at the pleasure of the parties; it being contemplated in every lease that the property shall at some time definitely fixed, or to be determined later, revert to the lessor. p. 342.

3. ESTATE.—*Determinable Fee.*—An estate which may revert upon the happening of some contingency, but which, on the other hand, may endure forever, is a qualified or determinable fee. p. 342.

4. RELIGIOUS SOCIETIES.—*Real Estate for Use of Church.—Reversion on Cessation of Use.—Determinable Fee.*—A conveyance of real estate to a religious society to hold so long as it shall be devoted to the use and interest of the church, on condition that it shall revert to the grantor on cessation of that use, creates in such society a determinable fee in the property. p. 342.

5. RELIGIOUS SOCIETIES.—*Trustees.—Filing Certificate of Election.—Statute.*—The evident purpose of §4979 Burns 1908, §3819 R. S. 1881, requiring the filing of a certificate of the election of trustees of a religious society, is to enable the public to learn who are the official representatives of the organization, and the filing of such certificate is not a prerequisite to the exercise of their duties as such trustees. p. 343.

6. RELIGIOUS SOCIETIES.—*Power to Hold Real Estate.—Incorporation.*—It is not necessary that a church society be a body corporate under the laws of the State to enable one of its trustees to hold real estate in trust for it.   p. 343.

From Superior Court of Marion County (76,200) ; *Vinson Carter,* Judge.

Action by Pearson Mendenhall and another against The First New Church Society of Indianapolis.   From a judgment for defendant, the plaintiffs appeal.   (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)   *Affirmed.*

*Ovid B. Jameson* and *Linn D. Hay,* for appellants.
*James M. Winters,* for appellee.

MONKS, J.—Appellants brought this action to quiet title in and to certain real estate in the city of Indianapolis. Appellee answered the complaint by general denial.   It also filed a cross-complaint, setting up title to the property, and demanding that title to the same be quieted in the church society, which it withdrew at the close of the evidence.   The court, at the request of one of the parties, made a special finding of facts and stated its conclusions of law thereon.   Over appellants' motion for a new trial judgment, in accordance with the conclusions of law, was rendered.

The errors assigned and not waived call in question each conclusion of law.

The part of the special finding necessary to a determination of this cause is, substantially, as follows:   "Prior to May 26, 1874, Stoughton A. Fletcher, Sr., of Indianapolis, was the owner of the real estate in controversy ; that previous to that date he had erected a brick building on said real estate, which was fitted up as a church room or meeting place ; that in the month of July, 1873, twenty-seven persons, among whom were George A. Adams and said Stoughton A. Fletcher, Sr., met, and proceeded to organize a church, by

adopting a constitution and electing officers. Article two of said constitution provided that the officers should consist of a president, secretary, treasurer and three trustees, and that these should constitute the executive committee, who should have the business management of said organization; that on May 26, 1874, said Stoughton A. Fletcher, Sr., executed and delivered to George F. Adams an instrument in writing, in the words and figures following:

"This Indenture, Made on the 26th day of May, A. D. One Thousand Eight Hundred and Seventy-Four, between S. A. Fletcher, of the county of Marion, State of Indiana, of the first part, and C. F. Adams, of county and State aforesaid, of the second part, WITNESSETH, that the party of the first part, for and in consideration of the rents, covenants and agreements hereinafter mentioned and contained on the part of the party of the second part, their executors, administrators and assigns, to be paid, observed and performed, has demised and leased, and by these presents do hereby demise and lease unto the said party of the second part, their executors, administrators and assigns, the brick building on North Alabama street, known as No. 333, together with all and singular, the rights, privileges and appurtenances, to the same belonging. To have and to hold the said demised premises to the said party of the second part, for and during the time they may occupy and use it as a church and Sunday school, next ensuing the date thereof, the said party of the second part yielding and paying therefor, during the continuance of this lease, to the party of the first part in money, the rent of all assessments against said property. Shall keep the building in good condition and repair and shall keep the building insured for $2,000, for the benefit of said Fletcher. And the said party of second part does hereby covenant and agree to well and truly pay, or cause to be paid, the rent aforesaid, on the days aforesaid, and to clean out each and every stove pipe and chimney flue of said premises, in which fire is kept, at least once every three months, when the same is in use, and to neither take up, or permit others to take up, and set away, any ashes in a wooden or other combustible vessel; and the said party of the second part further agrees to use and occupy the premises leased for a

church and Sunday school and nothing else, and neither to sublease or underlet any part of said premises, nor to transfer this lease to anyone without the written consent of the party of the first part herein first had and obtained; and the said party of the second part hereby further agrees that at all times during the term aforesaid, they will use all proper and reasonable means in their power to prevent horses, cows and other animals from running at large upon that portion of said premises set in trees, or in shrubbery, or used as a garden; and further that they will use due care to save the property from being damaged by driving nails in the plastering or casing, or destroyed by fire or otherwise; and that for nonpayment of the rent aforesaid, at the time and on the days aforesaid, and for a breach of any of the covenants herein contained, this lease may and shall be forfeited at the option of the party of the first part, or his legal representatives, who may reenter and take possession of the premises and put out and utterly expel the party of the second part, without in anywise being a trespasser, and who may proceed to collect the rents due or in arrears, or for damages, by distress or otherwise, without any relief whatever from valuation or appraisement laws. And the said party of the second part further agrees at the expiration of this lease to deliver up the possession of said premises peaceably, and in as good repair as the same is now in, or in as good condition as the said party of the first part may, at any time during this lease, put the same in, the natural wear, accident from fire and the act of God excepted. In WITNESS WHEREOF, The parties have hereunto set their hands and seals at Indianapolis, the day and year above written.

S. A. Fletcher  (Seal)
G. F. Adams  (Seal)''

Which instrument in writing demised and granted to George F. Adams for said church said property so long as said church should continue to occupy the same for church and Sunday school purposes; that at said time said George F. Adams was a member and one of the trustees of said organization, called by the name of The First New Church Society of Indianapolis; that at or about the time of the execution of said instrument in writing above named, said

Stoughton A. Fletcher, Sr., placed said organization in possession of said building named in said instrument in writing and the land and appurtenances thereto belonging, and said organization occupied the same after that date, and conducted therein a church and Sunday school, and have so held possession and conducted therein a church and Sunday school continuously until the present date; and are now still doing so; that when said organization was so placed in possession of the real estate and building by said Stoughton A. Fletcher, Sr., as above stated, he orally stated to the members and others that he intended that said organization should have said property as a permanent church home as long as they should continue to use it for church purposes. Stoughton A. Fletcher died in 1882, leaving a will by which he devised this property to his daughter Laura F. Hyde for life, and upon her death to her children. In case of her death without descendants, the property was to go to the other heirs at law of said Fletcher. Laura F. Hyde died in 1904, leaving no descendants alive. Upon the distribution and partition of the property among the heirs, the building in question was conveyed to Stoughton J. Fletcher, a son of said Stoughton A. Fletcher, Sr. Stoughton J. Fletcher conveyed the property by quitclaim deed to appellant Mendenhall, who, in turn, executed a quitclaim deed to appellant Gregory, for an undivided half of said real estate. In the year 1878 or 1879 said church organization, with the knowledge of said Stoughton A. Fletcher, Sr., erected an addition to said building, and ever since has occupied and used it, in connection with the former building, for church and Sunday school purposes. Soon after the building was occupied for church purposes, to wit, in the year 1874, there was placed over the front door of said building a sign reading as follows: "First New Church Society of Indianapolis", also a sign stating the days and hours of holding church services in said building, and said signs have ever since continued to remain and are now on said building. Since said occupancy

said church organization has changed the front of said building, by placing the front door in the center of the building, and with a window on either side thereof. Said organization has kept said property in repair, and has paid all legal local assessments thereon. Said church organization has occupied said premises and used them for church and Sunday school purposes from May, 1874, to the present date, continuously, uninterruptedly and under a claim of right so to occupy and use the same so long as it should desire and continue such use and occupancy.

On these facts the court stated conclusions of law to the effect, that, by his verbal donation to said church organization, putting it in possession, and the written instrument executed to George F. Adams, said Fletcher created in appellee an estate in fee, determinable on the happening of an uncertain contingency, to wit, the ceasing to occupy said property for church and Sunday school purposes; that so long as appellee shall continue so to use and occupy said premises it has the right to retain possession, control and use thereof, and appellants have no right thereto; that if at any time in the future appellee shall cease to use and occupy said property for church and Sunday school purposes, then, on the happening of that event, the property shall revert to appellants; that appellants are entitled to have their title quieted in the property in controversy to the extent only of a right of reversion on the happening of the contingency herein named, but are not entitled to quiet their title thereto for any period prior to the happening of such contingency.

The errors assigned present the question whether a determinable fee in said real estate was created as adjudged by the court, or a leasehold as contended by appellant. It is true that by its own terms the instrument is referred to as a lease, and that the term "rent" is used in connection with appellee's agreement to pay all assessments against the property. These terms, although used by the parties, are not controlling in the determination of the character of the

instrument. The character of a written instrument 1. is to be determined from the real nature of the transaction, and not from the form nor the name which the parties apply to the instrument. *Hanlon* v. *Doherty* (1887), 109 Ind. 37, 9 N. E. 782; *Keller* v. *Orr* (1886), 106 Ind. 406, 7 N. E. 195; *Cox* v. *Ratcliffe* (1886), 105 Ind. 374, 5 N. E. 5.

The effect of a lease is to give the lessee the right to the possession of the property for a term of years, or at the pleasure of the parties. It is within the contemplation 2. of every lease that the property shall at some time, definitely fixed, or to be determined later, revert to the lessor. An estate which may revert upon the happening of some contingency, but which, on the other hand, may endure forever, is a qualified or determinable fee. 3. 4 Kent's Comm. 10; 1 Washburn, Real Prop. (6th ed.) §162; 1 Kerr, Real Prop. §419; Minor & Wurts, Real Prop. §157; 1 Minor, Real Prop. §168; *Jordan* v. *Goldman* (1891), 1 Okla. 406, 34 Pac. 371; *Wiggins Ferry* v. *Ohio, etc., R. Co.* (1879), 94 Ill. 83; *Moulton* v. *Trafton* (1874), 64 Me. 218; *People* v. *White* (1851), 11 Barb. 26, 28; *Union Canal Co.* v. *Young* (1836), 1 Wharton (Pa.) 410, 427, 30 Am. Dec. 212; *Walsingham's Case* (1569), 1 Plowd. *547, *557.

Chancellor Kent, in 4 Kent's Comm. 10 says: "A qualified, base or determinable fee is an interest which may continue forever, but the estate is liable to be determined without the aid of a conveyance, by some act or event, circumscribing its continuance or extent. * * * It is the uncertainty of the event, and the possibility that the fee may last forever, that renders the estate a fee and not merely a freehold."

It has been held that a conveyance of real estate to a religious society to hold so long as such real estate 4. shall be devoted to the use and interest of the church, on the condition that said real estate should revert

to the estate of the grantor on the cessation of such use, created in said religious society a determinable fee in the property. *First Universalist Society* v. *Boland* (1892), 155 Mass. 171, 29 N. E. 524, 15 L. R. A. 231; *North* v. *Graham* (1908), 235 Ill. 178, 85 N. E. 267, 18 L. R. A. (N. S.) 624, 126 Am. St. 189.

It is clear that the court did not err in its conclusions of law.

It is next insisted that said church "had no power to receive, own or acquire real estate in fee, because no certificate of the election of trustees was ever filed, as required by §§4979, 4983, 4984, 4986 Burns 1908, §§3819, 3823, 3824, 3826 R. S. 1881, to authorize appellee to acquire real estate," citing *Porter* v. *State, ex rel.* (1895), 141 Ind. 488, 40 N. E. 1061, and *Dinwiddie* v. *Town of Rushville* (1871), 37 Ind. 66. Said cases did not involve the sections of the statute cited by appellant, and are not in point here.

It was held by this court in *Roberts* v. *Hill* (1894), 137 Ind. 215, 36 N. E. 843, that the filing of a certificate of election of trustees as required by §4979, *supra,* was 5. not a prerequisite to the exercise of the duties of trustees by those who have been elected to such office, that the evident purpose of the statute was to enable the public to learn who constituted the official representatives of the organization. Moreover it was not necessary 6. that said church be a body corporate under the laws of the State to enable Adams to hold said real estate in trust for it.

Having determined all the questions presented by the statement of points in appellant's brief, and finding no error, the judgment is affirmed.

NOTE.—Reported in 98 N. E. 57. See, also, under (1) 9 Cyc. 577; (2) 24 Cyc. 894; (3) 16 Cyc. 602; (4) 34 Cyc. 1155; 77 Am. St. 747; (5) 34 Cyc. 1132; (6) 34 Cyc. 1149.