

FILED

Sep 27 2018, 9:08 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Karl L. Mulvaney
Nana Quay-Smith
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

John E. Brengle
Indiana Legal Services, Inc.
New Albany, Indiana

Jon Laramore
Cheryl Koch-Martinez
Adam Mueller
Indiana Legal Services, Inc.
Indianapolis, Indiana

ATTORNEYS FOR *AMICUS CURIAE*
STATE OF INDIANA

Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana
Indianapolis, Indiana

Justin G. Hazlett
Section Chief, Consumer Litigation
Indianapolis, Indiana

Steven P. Frank
Michelle Alyea
Amanda Lee
Julia C. Payne
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR *AMICUS CURIAE*
CONSOLIDATED CITY OF
INDIANAPOLIS AND MARION COUNTY

Maggie L. Smith
Darren A. Craig
Frost Brown Todd LLC
Indianapolis, Indiana

Donald E. Morgan
Office of Corporation Counsel
Indianapolis, Indiana

ATTORNEYS FOR *AMICUS CURIAE*
INDIANA ASSOCIATION FOR
COMMUNITY ECONOMIC
DEVELOPMENT INC. D/B/A
PROSPERITY INDIANA

Maggie L. Smith
Darren A. Craig
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR *AMICUS CURIAE*
NEIGHBORHOOD CHRISTIAN LEGAL
CLINIC

Maggie L. Smith
Darren A. Craig
Frost Brown Todd LLC
Indianapolis, Indiana

Chase M. Haller
Neighborhood Christian Legal Clinic
Indianapolis, Indiana

ATTORNEY FOR *AMICI CURIAE*
ECONOMIC JUSTICE PROJECT OF
NOTRE DAME CLINICAL LAW CENTER
AND NATIONAL CONSUMER LAW
CENTER

Judith Fox
Notre Dame Clinical Law Center
South Bend, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| Rainbow Realty Group, Inc., and/or Cress Trust, | September 27, 2018 |
|---|---|

*Appellants/Cross-Appellees/Plaintiffs,*

*v.*

Katrina Carter and
Quentin Lintner,

*Appellees/Cross-Appellants/Defendants.*

Court of Appeals Case No.
49A02-1707-CC-1473

Appeal from the Marion Superior
Court

The Honorable Marshelle
Dawkins Broadwell, Magistrate

The Honorable James B. Osborn,
Judge

Trial Court Cause No.
49D14-1505-CC-16629

**Bradford, Judge.**

# Case Summary[1]

In May of 2013, Appellees-Defendants Katrina Carter and Quentin Lintner (collectively, "the Lintners") signed a contract with Appellants-Plaintiffs Rainbow Realty Group, Inc., and/or Cress Trust (collectively, "Rainbow") styled as a rent-to-buy contract ("the Agreement") for an uninhabitable house in Indianapolis ("the Property"). The Agreement provided that the Lintners were purchasing the house, were responsible for all repairs, could retain all profits if they sold the house for more than their contractual payoff, would be subject to eviction if they defaulted, and would have their payments applied to the

---

[1] We heard oral argument in this case on August 28, 2018, in the Indiana Supreme Court Courtroom in the Indiana Statehouse in Indianapolis. We commend counsel (Mr. Mulvaney for the Appellants and Mr. Laramore for the Appellees) for the high quality of their presentations and thank the staff of the Indiana Supreme Court for its assistance in conducting this argument.

purchase price if timely made for two years. The Agreement did not require that it would end with a reversion of the Property to Rainbow.

[2] Almost from the beginning, the Lintners failed to make consistent payments pursuant to the Agreement, and, in June of 2015, Rainbow filed suit to terminate it, seeking immediate possession, damages, and attorney's fees. The Lintners moved for partial summary judgment on the basis that the Agreement was actually a lease and that Rainbow had violated Indiana's warranty of habitability that applies to residential leases pursuant to Indiana Code article 32-31, chapters 3 through 9 ("the Landlord-Tenant Act").[2] The trial court entered summary judgment in the Lintners' favor on the question of whether Rainbow had violated provisions of the Landlord-Tenant Act. Following a trial on remaining issues, the trial court entered judgment in favor of the Lintners, awarding them $4000 for what it concluded were Rainbow's fraudulently deceptive statements as well as $3000 in attorney's fees. Rainbow contends that the trial court erred in concluding that the Agreement was actually a lease and that it committed fraud by misrepresenting its true character to them. The Lintners contend that the trial court's judgment was correct but that its award of $3000 in attorney's fees (when approximately $35,000 was requested) constituted an abuse of discretion.

---

[2] Indiana Code section 32-31-2.9-2 provides that the term "residential landlord-tenant statute" refers to any of these chapters. For convenience, they will be referred to, collectively, as "the Landlord-Tenant Act."

We conclude that the Agreement is not a lease subject to the Landlord-Tenant Act. We do so pursuant to a long line of Indiana precedent requiring all leases to have a definite term and a reversion to the lessor, provisions the Agreement lacks. Our conclusion leads to the further conclusion that there is no basis on which to find that Rainbow committed fraud as a matter of law. Finally, because the Lintners did not prevail in the trial court, they are not entitled to recover any of their attorney's fees. We reverse and remand with instructions to enter judgment in favor of Rainbow on their claim for eviction and immediate possession of the Property. We also vacate the trial court's judgment that Rainbow committed fraud and its award of attorney's fees to the Lintners.

## Facts and Procedural History

Rainbow was founded in 1974 by James Hotka and buys and sells homes in inner-city Indianapolis. Rainbow buys vacant, abandoned, or distressed homes in need of rehabilitation and sells or leases them through various programs to interested parties. Rainbow sells structures that have not yet been renovated to purchasers, primarily through its rent-to-buy program, which it began in 1992.

On April 24, 2013, Carter called Rainbow to inquire about home ownership through the rent-to-buy program. On April 30, 2013, the Lintners returned to Rainbow's office to fill out their application after choosing the Property, located at 910 North Oakland Avenue in Indianapolis. When the Lintners arrived,

they were given a document which listed the homes available on that date, including the Property. The document given to the Lintners stated, in part:

> THE SELLER(S) OF THE ABOVE PROPERTY HAVE NEVER LIVED IN THIS PROPERTY. THE PROPERTY, INCLUDING THE CONTENTS (IF ANY) ARE BEING SOLD "AS-IS" IN THEIR PRESENT CONDITION. THE SELLER(S) NOR RAINBOW REALTY GROUP INC. MAKE NO WARRANTIES NOR GUARANTIES AS TO THE CONDITION, HABITABILITY AND/OR LAWFUL ZONING USE OF THE PROPERTY.

Plaintiffs' Ex. 2.

[6] The Lintners completed an application to purchase the Property and put $100 down to hold it. Another document given to the Lintners provided that they would pay $449 when they signed the Agreement (the first month's payment minus the $100 deposit), and that their regular monthly payments thereafter would be $549. Carter signed this document, and placed her initials beside the paragraph which stated, "I HEREBY ACKNOWLEDGE AND UNDERSTAND THAT ALL PROPERTIES ARE BEING SOLD AS-IS WITHOUT ANY WARRANTY OF HABITABILITY." Plaintiffs' Ex. 6.

[7] After they were approved, the Lintners returned to Rainbow's office on May 3, 2013, to sign the Agreement, which provided, in part, as follows:

> B. METHOD OF PAYMENT: "Rent to Buy" The Buyer shall pay $.00 down payment plus make rental payments to the Landlord that are equal to the [principal, interest, taxes, and insurance] Payment stated below. The 1st rental payment shall be due upon the execution of this agreement. Said payment shall

apply to the current month. The Buyer shall make like payments, as rent, on the first of each month. Once the Buyer has made twenty-four (24) or more rental payments, the parties hereto shall execute a "Conditional Sales Contract" (Land Contract) form embodying the terms contained herein.

Plaintiffs' Ex. 7 at 1.

[8] The financial terms included a fixed interest rate of 16.30%, thirty years of monthly payments of $514, and estimated monthly property taxes of $35 for a total monthly payment of $549. Paragraph E of the Agreement provided that

> The Buyer acknowledges and understands that the property is owned by a Land Trust and the owner must provide the Buyer with a 'Seller's Residential Real Estate Disclosure' under Indiana law (IC 24-4.6-2). **The Buyer hereby acknowledges the receipt of said disclosure form.** The Buyer also understands the Seller has never lived in the property and has little or no knowledge of the properties [*sic*] condition, and therefore makes no warranties of condition and/or habitability. The Buyer has been made aware that independent inspections disclosing the condition of the property are available, and has been afforded the opportunity prior to the execution of this agreement to acquire said inspections. The Buyer agrees to purchase the property as **"AS-IS" (THE OWNER WILL MAKE NO REPAIRS)** condition and hereby releases the Seller, Landlord and/or Property Manager, it's [*sic*] agents and/or employees, of any and all liability relating to any defect or deficiency affecting the property.

Plaintiffs' Ex. 7 at 1 (emphases in original). Paragraph C of the Agreement required the Lintners to make their payment on the first day of each month and provided that failure to timely make these payments subjected them to the risk of eviction.

[9]     Along with the Agreement, the Lintners also signed a "Purchase Agreement Declaration" ("the Declaration"), which was explicitly made part of the Agreement. The Declaration provides as follows:

> PURCHASE AGREEMENT INTENT: Purchase Agreement is not a "rent with an option to purchase", buyer is required to purchase and seller is required to sell under the agreed purchase price, down payment and monthly payment. Because the Purchase Agreement mentions the word "rent" [Rainbow] wishes to prevent misunderstandings and/or confusion about the intent of this agreement. At the time of signing, the buyer has the exclusive right to declare his/her intent in this agreement.

Plaintiffs' Ex. 8.

[10]    The Lintners checked and initialed the "buying" option on the Declaration:

> My intent is to purchase the property at 910 N. Oakland Av., Indianapolis, IN 46201. I am not renting the property. All payments shall apply to the principal and interest shown on the amortization schedule provided at closing. If I decide to sell the property during the term of our agreement I shall be entitled to all profits above my payoff. In Addition [*sic*], I wish to save money by repairing and maintaining the property myself. I do not expect the property owner to make any repairs to the property and fully understand that I am buying the property "as-is" with out [*sic*] any warranty of habitability.

Plaintiffs' Ex. 8. Neither the Agreement nor the Declaration contained any provision requiring reversion of the Property to Rainbow.

[11]    The Lintners began arranging for repairs to the Property after signing the Agreement, finally agreeing to use Rainbow's contractors, with the costs of the repairs to be spread out in interest-free amounts added to the monthly

payments. The Lintners agreed to make increased payments of $649 per month beginning in June of 2013. The repair work was completed on July 22, 2013, and the Lintners moved into the Property on or about August 1, 2013.

[12] Meanwhile, the Lintners had not made the May, June, or July of 2013 payments. In July of 2013, Rainbow began eviction proceedings but dismissed the complaint and agreed to a payment plan for the arrearage. After more arrearages and being given more chances to cure the delinquency, the Lintners made their final payment on February 16, 2015. On March 25, 2015, Rainbow again filed for eviction in Marion Small-Claims Court, and the Lintners appealed the matter to Marion Superior Court.

[13] On June 8, 2015, Rainbow filed a complaint in Marion Superior Court to terminate the Agreement and for immediate possession of the Property. On July 29, 2015, the Lintners answered Rainbow's complaint, raising defenses and counterclaims, including allegations of fraud and misrepresentation, deceptive acts pursuant to Indiana Code section 24-9-3-7, and failure to meet (and misstatement of) its obligations as a landlord pursuant to Indiana Code chapters 32-31-1 and 32-31-8.

[14] On May 17, 2016, the Lintners filed for partial summary judgment on their claims that the Agreement was a lease and that Rainbow breached the warranty of habitability and made false or deceptive statements regarding its ability to disclaim the warranty. On August 11, 2016, the trial court granted the Lintners' motion for partial summary judgment, ruling that (1) for the first two

years the Agreement was a lease; (2) the Landlord-Tenant Act therefore governed the Agreement; (3) Rainbow was liable for breaching the warranty of habitability; and (4) Rainbow made false or deceptive statements.

A bench trial was held on remaining issues on December 6, 2016, and January 10 and March 22, 2017. On June 8, 2017, the trial court entered its judgment, sustaining its earlier entry of partial summary judgment in favor of the Lintners. As for damages, the trial court concluded that while Rainbow had breached the warranty of habitability, the Lintners had not paid an unconscionable amount pursuant to the Agreement, were not entitled to the return of their payments, and were not entitled to damages for unjust enrichment. The trial court awarded the Lintners $1000 in compensatory and $3000 in punitive damages for what it found were Rainbow's fraudulent misrepresentations regarding the nature of the Agreement and also awarded $3000 in attorney's fees. Rainbow contends that the trial court erred in concluding that the Agreement was a lease and that Rainbow committed actual fraud. The Lintners cross-appeal, contending that the trial court abused its discretion in awarding them only $3000 in attorney's fees.

# Discussion and Decision

### *Direct Appeal Issues*

## I. Whether the Agreement Is a Lease

Rainbow challenges the trial court's grant of partial summary judgment to the Lintners, specifically its determination that the Agreement was a lease subject

to the Landlord-Tenant Act. In Indiana, pretrial summary judgment rulings are reviewable after trial. *Keith v. Mendus*, 661 N.E.2d 26, 35 (Ind. Ct. App. 1996), *trans. denied*. As the moving party on summary judgment, the burden was on the Lintners to make a *prima facie* showing that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. *Morris v. Crain*, 71 N.E.3d 871, 879 (Ind. Ct. App. 2017). The trial court's entry of partial summary judgment is reviewed under a *de novo* standard of review. *Id.* When reviewing an entry of summary judgment, this Court does not weigh the evidence but considers the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind. Ct. App. 1994), *trans. denied*. Like the trial court, this Court must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002).

[17] The central question of this case is whether the Agreement was a lease governed by the Landlord-Tenant Act, and to answer this question, we must examine the provisions of both the Landlord-Tenant Act and the Agreement. An issue of statutory construction presents a question of law which is reviewed *de novo* on appeal. *See Chrysler Group, LLC v. Review Bd. of the Ind. Dep't. of Workforce Dev.*, 960 N.E.2d 118, 124 (Ind. 2012); *State v. Eichorst*, 957 N.E.2d 1010, 1012 (Ind. Ct. App. 2011), *trans. denied*. We owe no deference to the trial court's statutory interpretation. *Art Country Squire, L.L.C. v. Inland Mortg. Corp.*, 745 N.E.2d 885, 889 (Ind. Ct. App. 2001). Similarly, issues of contract interpretation are pure questions of law, which we also decide *de novo*. *George S. May Int'l Co. v. King*,

629 N.E.2d 257, 260 (Ind. Ct. App. 1994), *trans. denied*. We recognize that the unambiguous language of a contract is conclusive upon the contracting parties and the courts. *Turnpaugh v. Wolf*, 482 N.E.2d 506, 508 (Ind. Ct. App. 1985).

[18] Indiana Code section 32-31-2.9-3 defines the scope of the Landlord-Tenant Act, providing that it "appl[ies] to rental agreements for dwelling units located in Indiana." When the Landlord-Tenant Act applies, it requires a landlord to warrant a rental property's habitability, providing that, *inter alia*, "[a] landlord shall [… d]eliver the rental premises to a tenant in compliance with the rental agreement, and in a safe, clean, and habitable condition." Ind. Code § 32-31-8-5. There is no dispute that if the Landlord-Tenant Act applied to the Agreement, the Agreement violated the Act's warranty of habitability for rental premises. The question is whether the Landlord-Tenant Act applied to the Agreement.

[19] While the Landlord-Tenant Act does not define "lease," it broadly defines a "rental agreement" as "an agreement together with any modifications, embodying the terms and conditions concerning the use and occupancy of a rental unit."[3] Ind. Code § 32-31-3-7(a). This limited guidance for determining whether a particular instrument is a lease is not quite sufficient to dispose of the

---

[3] While the parties seem to assume, and we agree, that a lease would qualify as a "rental agreement," the Landlord-Tenant Act seems to have been drafted to also cover rental agreements that are not in written form.

question in this case. Fortunately, the Indiana Supreme Court has provided us with the additional guidance required.

[20] In a line of cases, the Indiana Supreme Court has made it clear that a lease, among other requirements, lasts a definite term and ends with the reversion of the real property to the grantor. In 1845, the Court stated that

> [n]o particular form is necessary to make a good lease. Any words expressive of the intention of the parties, one to part with and the other to take the possession of premises *for a definite time*, whether in the form of "a license, covenant, or agreement," will constitute a good demise for years.

*Munson v. Wray*, 7 Blackf. 403, 404 (Ind. 1845) (citation omitted and emphasis added). In 1885, the Indiana Supreme Court reiterated that a lease must have an endpoint: "But it may be said, in general terms that where the conveyance of an estate in land, subordinate to that of the grantor, to a grantee, upon a valid consideration, *and for a definite term*, is made, the instrument making the conveyance is a lease." *New York, Chicago & St. Louis Ry. Co. v. Randall*, 102 Ind. 453, 457, 26 N.E. 122, 123 (1885) (emphasis added).

[21] In the 1892 case of *Haywood v. Fulmer*, the Indiana Supreme Court adopted the following definition of "lease," which now also explicitly required the previously-implied reversion to the original grantor: "'A lease at the common law is a grant or assurance of a present or future interest for life, for years, or at will, in lands or other property of a demisable nature, *a reversion being left in the party from whom the grant or assurance proceeds*.'" 158 Ind. 658, 660, 32 N.E. 574,

575 (1892) (citation omitted and emphasis added). The Court was even more emphatic about the reversion requirement two decades later:

> The effect of a lease is to give the lessee the right to the possession of the property for a term of years, or at the pleasure of the parties. *It is within the contemplation of every lease that the property shall at some time, definitely fixed, or to be determined later, revert to the lessor.*

*Mendenhall v. 1st New Church Soc'y of Indpls.*, 177 Ind. 336, 342, 98 N.E. 57, 60 (1912) (emphasis added).

[22] Although the question has been revisited infrequently since *Mendenhall*, the results have been consistent with that case and its predecessors. In 1914, this court stated that "[a] lease of real estate is a contract by which, ordinarily the owner divests himself of the possession and use of his property, in favor of the lessee, upon a valid consideration, for a definite term." *Spiro v. Robertson*, 57 Ind. App. 229, 234, 106 N.E. 726, 728 (1914) (citations omitted). In 1932, we said, "'it is one of the essentials of a lease, that it should contain a reversion in favor of the party from whom the grant or assurance proceeds.'" *Indian Ref. Co. v. Roberts*, 97 Ind. App. 615, 630, 181 N.E. 283, 288 (1932) (quoting *Smiley v. Van Winkle*, 6 Cal. 605, 606 (1856)). Most recently, we noted that "[i]t has long been the law in Indiana that '[a] lease of real estate is a contract by which, ordinarily[] the owner divests himself of the possession and use of his property, in favor of the lessee, upon a valid consideration, for a definite term.'" *Smyrniotis v. Marshall*, 744 N.E.2d 532, 535 (Ind. Ct. App. 2001) (quoting *Spiro*, 57 Ind. App. at 234, 106 N.E. at 728), *trans. denied*. Finally, the Landlord-

Tenant Act itself recognizes that a defining characteristic of "rental agreements" is that they end at some point: "The term [rental agreement] includes an agreement, regardless of what the agreement is called, that satisfies the following: […] (2) The agreement provides for a rental period, explicitly or implicitly, regardless of the term of the rental period." Ind. Code § 32-31-3-7(b). Our research has revealed no indication that the propositions for which the cited authority stands have been overturned, abrogated, limited, or even questioned, either judicially or legislatively.

[23] In light of the above authority, the requirement that a lease contemplate a definite term and a reversion to the lessor remains good law and, insofar as it was issued by the Indiana Supreme Court, is absolutely binding on this court:

> We are bound by the decisions of our supreme court. *See In re Petition to Transfer Appeals*, 202 Ind. 365, 376, 174 N.E. 812, 817 (1931). Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment. *Id*. While Indiana Appellate Rule 65(A) authorizes this Court to criticize existing law, it is not this court's role to "reconsider" supreme court decisions.

*Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002), *trans. denied*.

[24] Turning to the Agreement, it did not require that it would end after a definite term, much less end with reversion of the Property to Rainbow, which are necessary features of all leases in Indiana. We are therefore bound to conclude that the Agreement was not a lease and that the Landlord-Tenant Act's provisions did not govern it.

[25] The Lintners nonetheless argue that the Agreement was actually a lease because it contained many features they characterize as lease-like: it (1) required them to make monthly payments which generated no immediate equity; (2) allowed them to be evicted, not foreclosed; (3) explicitly referred to the first twenty-four payments as "rent"; and (4) placed restrictions on their use of the Property, such as limitations on plaster and stud removal and forbidding pets and unused vehicles. The Lintners characterize the Agreement as a "contract which […] mingled [the] concepts of lease and purchase, selectively using them to exclusively benefit [Rainbow]." Appellees'/Cross-Appellants' Brief p. 17. While we agree that many of the identified provisions are like those generally found in leases (as opposed to sales agreements), none of this makes the Agreement a lease if it did not also require reversion to Rainbow at some point.

[26] This is not quite the end of our inquiry, however. In their Appellees' brief, the Lintners argue that even if the Agreement is not a lease, it was created to avoid application of the Landlord-Tenant Act and is thereby subject to its provisions. "The [Landlord-Tenant Act does] not apply to [… o]ccupancy under a contract of sale of a rental unit […] if the occupant is the purchaser […] unless the arrangement was created to avoid application of [the Landlord-Tenant Act.]" Ind. Code § 32-31-2.9-4 (statutory provisions reordered for clarity).

[27] Avoidance, however, was not advanced as a basis for relief by the Lintners in the trial court and is therefore waived for appellate consideration. "A party may not raise an issue for the first time […] on appeal that was not raised in the trial court." *Rodgers v. Rodgers*, 503 N.E.2d 1255, 1257 (Ind. Ct. App. 1987),

*trans. denied*. That said, Rainbow began its rent-to-buy program in 1992, over ten years before the Landlord-Tenant Act was enacted, and the Lintners point to nothing specific in the record, other than the Agreement itself, as evidence that the Agreement was created to avoid application of the Landlord-Tenant Act. While the Lintners characterize the Agreement as "a tangled and confusing array of provisions [that impose] additional duties of 'homeowners' but none of the benefits, in a high-risk rental contract with severe consequences for even a minor breach[,]" Appellees'/Cross-Appellants' Br. p. 38, this does not constitute evidence that it was created to avoid application of the Landlord-Tenant Act. In fact, the Declaration explicitly provides that it "is not an attempt to waiver or avoid application of the residential landlord-tenant statutes; its purpose is to clarify the intent of the agreement and to spell out financial responsibilities for repair and maintenance." Ex. 8. Even if the Linters had properly preserved this issue, our review of the record reveals nothing that would support a finding that the Agreement was created to avoid application of the Landlord-Tenant Act.

[28] Finally, while the Lintners do not argue (and the trial court did not conclude) that the Agreement is unconscionable, it is fair to say that the Lintners have consistently emphasized what they characterize as the predatory nature of the Agreement and argue that a liberal construction of the Landlord-Tenant Act— and a narrow construction of its exceptions—is sound public policy. Even if we accept the proposition that a broad reading of the Landlord-Tenant Act is

sound public policy, it simply cannot be read broadly enough to make a lease out of something that lacks some of a lease's most fundamental characteristics.[4]

## II. Actual Fraud by Misrepresenting the Nature of the Agreement

[29] Rainbow contends that the trial court erred in concluding that it had committed fraud by misrepresenting the true nature of the Agreement, namely that Rainbow was not required to warrant the Property's habitability. Actual fraud consists of the following: "(1) a material representation of a past or existing fact by the party to be charged that; (2) was false; (3) was made with knowledge or reckless ignorance of its falsity; (4) was relied upon by the complaining party; and (5) proximately caused the complaining party's injury." *Ruse v. Bleeke*, 914 N.E.2d 1, 10 (Ind. Ct. App. 2009). We have concluded that the Agreement was not a lease and therefore not subject to the provisions of the Landlord-Tenant Act and its warranty of habitability. Therefore, any representations to that effect were not, in fact, false, which by itself fatally undercuts any finding of actual fraud and requires reversal of the trial court's judgment to that effect.

---

[4] The various *amici* also argue, *inter alia*, that devices such as the Agreement are deceptive and predatory, shift all of the risk and cost of the transaction onto the buyer, and are used by companies to exploit persons who they know will be very unlikely to be able to make payments over time. Some *amici* provide background on attempts over the years to circumvent consumer-protection laws by real-estate speculators and note that several surrounding states have recently amended their laws to curb such practices. There is no attempt to characterize these arguments as based on anything other than public policy grounds, and it is well-settled that "public policy is a matter for the General Assembly subject only to constitutional limitations on legislative authority." *Murray v. Conseco, Inc.*, 795 N.E.2d 454, 457 (Ind. 2003).

## III. Attorney's Fees

Pursuant to the Landlord-Tenant Act,

> [i]f the tenant is the prevailing party in an action under this section, the tenant may obtain any of the following, if appropriate under the circumstances:
>> (1) Recovery of the following:
>>> (A) Actual damages and consequential damages.
>>> (B) Attorney's fees and court costs.

Ind. Code § 32-31-8-6(d).

The Lintners contend that the trial court abused its discretion in awarding them only $3000 in attorney's fees after they submitted an affidavit of attorney's fees in the amount of $35,475. Because we have concluded that the trial court erroneously entered judgment in favor of the Lintners in all respects, however, the Lintners are not the "prevailing party in an action" pursuant to the Landlord-Tenant Act and are not entitled to seek recovery of any of their attorney's fees.

# Conclusion

The Agreement admittedly has some characteristics that are commonly associated with sales contracts and some commonly associated with leases. On the one hand, the Agreement requires buyers to pay for taxes, insurance, and necessary repairs; allows them to build equity (eventually); and provides that

they may sell the property and keep the profit, which are all provisions commonly associated with sales contracts and ownership. On the other hand, the Agreement does not provide for the immediate accumulation of equity, places somewhat severe restrictions on the use and alteration of the property, and allows Rainbow to evict in the event of default rather than resort to foreclosure. Devices such as the Agreement seem to be a sort of hybrid, and an argument could be made that neither the current law pertaining to sales contracts nor the current law pertaining to leases is adequate to address the issues such devices raise. The Lintners and the *amici* also argue that rent-to-own contracts such as the Agreement are against public policy, alleging that they are used to prey on ignorant and unsophisticated "buyers" lured by the dream of home ownership who almost invariably end up with neither the home nor their investment in it. This may happen in some cases. Such concerns, however, are beyond the scope of this opinion and are the province of the General Assembly.

[33] That said, the central legal issue in this case is whether the Agreement was a lease, and we have concluded that it was not. Consequently, we reverse the trial court's entry of summary judgment in favor of the Lintners based on the conclusion that Rainbow violated the Landlord-Tenant Act's warranty of habitability. Moreover, we reverse the trial court's judgment that Rainbow committed actual fraud by misrepresenting the nature of the Agreement. Finally, we reverse the award of attorney's fees to the Lintners. We reverse the judgment of the trial court and remand with instructions to enter summary

judgment in favor of Rainbow on its action for eviction and immediate possession of the Property and for further proceedings, as necessary.

[34] The judgment of the trial court is reversed and remanded with instructions.

Baker, J., and Crone, J., concur.